SAMUEL H. HUDSON, administrator, *vs.* ROXBURY INSTITUTION FOR SAVINGS.

Suffolk.     March 8, 1900. — September 5, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, & LATHROP, JJ.

*Savings Bank — Lost Deposit Book — Instructions — Withdrawal of Deposits —*
*Waiver of Notice — By-laws — Bond of Indemnity.*

In an action by an administrator to recover of a savings bank the balance due on a deposit made by the intestate in 1861, it appeared that there was a fire in 1867 in the house occupied by the intestate, and that a good many of his papers were destroyed; that the intestate died in 1868; that the treasurer of the bank had been connected with the institution for twenty-five years, and that no one had demanded payment of the account or had presented the deposit book; and that some time between April, 1863, and October, 1875, notice was given, though it did not appear by whom, that the book was lost. *Held,* that it could not be said that the most reasonable way of accounting for the non-production of the book was not that it was destroyed among other papers in the fire, or that a finding that it was so destroyed was clearly erroneous.

In an action by an administrator to recover of a savings bank the balance due on a deposit made by the intestate, the deposit book having been destroyed, the plaintiff is excused from producing it, and requests based upon the necessity of presenting the book to obtain payment are, therefore, rightly refused.

In an action to recover of a savings bank the balance due on a deposit, a finding that the bank through its treasurer had waived the right to any other or further notice of withdrawal than such as was given before the commencement of the action, disposes of a request for a ruling that the plaintiff was not entitled to withdraw his principal or any part thereof until a certain number of days after notice given to the treasurer of intention to make such withdrawal, unless the treasurer should, at his option, make payment upon shorter notice.

In an action by an administrator to recover of a savings bank the balance due upon a deposit made in 1861 by the intestate, who died in 1868, the question of identity having been settled in favor of the plaintiff, the defendant having substantially admitted the identity of the depositor with the plaintiff's intestate, and the court having found that the deposit book had been destroyed, there would seem to be no good reason why, on general principles, the plaintiff should be required to furnish a bond of indemnity as a condition of payment by the defendant, or that payment should be refused because not having been ordered by the investing committee conformably to a by-law — Article 26 — adopted long after the plaintiff's intestate had signed a deposit book assenting to by-laws then in force, and " to those which may be hereafter made pursuant to the power granted in

the third article," the third article providing for further regulations or by-laws or alterations of those already made, and that "all such regulations, by-laws, and alterations shall be equally binding on all depositors as those by them subscribed, after the same shall have been duly made known"; and there being nothing to show that Article 26 of the amended by-laws was ever made known to the plaintiff's intestate, or to any one having any authority to represent him or his estate, or that any steps were taken to make it known to him or them.

CONTRACT, to recover the balance due on a deposit made by the defendant's intestate. At the trial in the Superior Court, without a jury, before *Bond*, J., the following by-laws of the defendant were put in evidence:

Art. 3. The corporation establishes the following by-laws; and the trustees may at any meeting, at which at least seven of them shall be present, and after due notice of such intention, at a previous meeting, make such further regulations or by-laws, or alterations of those already made, as they may deem necessary; provided that the same may be re-examined and disallowed by the corporation, at their next meeting; and all such regulations, by-laws, and alterations shall be equally binding on all depositors, as those by them subscribed, after the same shall have been duly made known.

Art. 14. On making the first deposit the depositor shall be required to subscribe, and thereby signify assent, to the regulations and by-laws of the institution.

Art. 18. Dividends may be received either personally, by the order, in writing, of the depositors, or by letter of attorney. Money deposited shall only be drawn out by the depositor, or some person by him legally authorized; but no person shall receive any part of his principal or interest without producing the original book, that such payments may be entered therein.

Art. 19. All deposits shall be entered in the books of the corporation, and a duplicate shall be given to each depositor, in which the sum paid by him shall be entered, and which shall be his voucher and the evidence of his property in said institution.

Art. 21. Money deposited shall only be drawn out by the depositor, or by some person legally authorized; but no person shall receive any part of the principal or interest without producing the original book, that such payment may be entered therein. Nor shall he be entitled to withdraw his principal or any part thereof until sixty days after he shall have given notice

to the treasurer of his intention to make such withdrawal. The treasurer may, however, at his option, make payment upon any shorter notice.

Art. 24. Depositors may receive their dividends either personally or by written order, or by letter of attorney, on production of the book of deposit.

Art. 26. As the officers of this institution may be unable to identify every depositor transacting business at the office, the institution will not be responsible for loss sustained, when the depositor has not given notice of his book being lost or stolen, if such book be paid in whole or in part on presentment; provided, however, upon satisfactory proof of the loss or destruction of a book, the investing committee may order the payment of the amount due without the book; provided, also, if they think proper, they may require a bond to indemnify the institution.

Art. 30. Upon the death of any depositor, the moneys standing in the name and to the credit of such depositor shall be paid to his legatee or heir at law or legal representative, conformably to the laws of the State; and if the sum shall be under one hundred dollars, the same shall be paid to the legatee or next of kin, or legal representative, without expense of the probate of any will, or letters of administration; and it is agreed that such payment shall discharge the corporation.

Art. 31. On making the first deposit the depositor shall be required to subscribe, and thereby signify his assent, to the regulations and by-laws of the institution.

Articles 14, 21, 24, and 26 were amendments adopted in 1876.

The defendant requested the judge to rule substantially as follows: 1. That the original contract embraced the conditions in the by-laws of the defendant in force when the contract was made, and that in order to maintain the action the plaintiff must prove compliance with such terms of his intestate's contract with the defendant as are conditions precedent to a right of action; 2. That in view of Article 18 of the by-laws in force when the contract was made, providing that "no person shall receive any part of his principal or interest without producing the original book, that such payments may be entered therein," if the plaintiff or his intestate did not before the bringing of the action make a demand upon the defendant for the payment of all or of

part of the moneys to the credit of the account with the defendant, and accompany the demand with the presentation of the book of deposit, the action cannot be maintained ; 3. That there was no evidence that the deposit book had ever been presented to the defendant, and a demand made for the moneys due upon account of the same and a refusal by the defendant to comply, and that the plaintiff could not recover; 4. That the evidence was, that at no time before bringing the action had there been a presentation of the book and a demand of payment, and that the plaintiff could not recover; 5. That the plaintiff's intestate was bound by such further regulations or by-laws, or alterations of those already made, as the trustees of the defendant might deem necessary, and, in conformity with the defendant's by-laws, make, although made after the intestate entered into his contract with the defendant ; 6. That the intestate and the plaintiff were not entitled to withdraw the principal or any part thereof until sixty days after notice given to the defendant's treasurer of the intention, unless the treasurer should, at his option, make payment upon shorter notice, and there was no evidence that such notice was ever given or that it was waived, and the plaintiff could not maintain his action ; 7. That there was no evidence that the defendant had ever received satisfactory proof of the loss or destruction of the deposit book, or that the investing committee had ever ordered payment without the production of the book, or that the defendant had ever been tendered a bond of indemnity, and that therefore the plaintiff could not recover ; 8. That the nature of the contract was such that the plaintiff could not maintain the action unless, before bringing the action, a demand was made upon the defendant, and such demand was accompanied by a presentation of the deposit book, or unless satisfactory proof of the loss or destruction of the book was given to the defendant and the investing committee ordered payment without the production of the book, and that there was no evidence of compliance with any such terms, and that the plaintiff could not recover; 9. That upon all the evidence the plaintiff could not maintain his action.

The judge made the first and fifth rulings as requested, but refused to make the second, third, fourth, sixth, seventh, eighth, and ninth ; and the defendant excepted.

The judge made the following special findings: "I find that the deposits in the defendant bank, May 3 and 6, 1861, were made by James Crosby, of Roxbury, the plaintiff's intestate; that the pass book relating to the deposits was destroyed by fire in 1867; that the amendments to the by-laws of the defendant, made after such deposits, were not made known to James Crosby or to any one claiming under him; that the conduct of the treasurer of the bank, during the interviews with reference to the withdrawal of the deposit and as to the commencement of this suit, was a waiver of any right of the bank to insist, as a defence to this action, upon any other or further notice of an intention to withdraw said deposit than such as was given of such intention before the commencement of this action."

He then ruled, 1. That the agreement which Crosby signed under Article 31 of the by-laws in existence at the time of the deposit was not a consent to be bound by any amendments to such by-laws except as the amendments were made in pursuance to the power granted in the third article of said by-laws. 2. That no amendment to the by-laws in existence at the time of the deposit could affect the contract between the bank and Crosby, or those claiming under him, until such amendments were duly made known to him or them. 3. That the amended by-laws did not affect the contract between Crosby and the bank, and those claiming under him, as no notice was ever given of such amended by-laws. 4. That the loss or destruction of the pass book did not work a forfeiture of, or destroy the title to, the deposit in the bank; and that such deposit did not thereby become the property of the bank. 5. That it was the intent of Article 18 of the by-laws in force at the time of the deposit by Crosby, that the pass book should be produced when it was possible to do so; that, when the party having the title to the deposit cannot produce the pass book because of its loss or destruction, it is sufficient if he prove the loss or destruction of the pass book as the reason why it is not produced, and he is entitled to receive the deposit upon a tender, in a proper case, of a sufficient indemnity to the bank against loss by reason of the payment of the deposit to him. 6. That the plaintiff is entitled to recover in this case the amount standing to the credit of Crosby upon the books of the bank at the date of the writ, under Article 30 of the by-laws in force at

the time of the deposit; he having proved that said pass book has been destroyed and that for this reason he is unable to produce it; that as administrator he ought not to be compelled to give a bond of indemnity to said bank as a condition of his recovery in this suit.

The defendant excepted to the special findings and rulings. The judge found for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*F. Paul*, for the defendant.

*P. A. Collins*, for the plaintiff.

MORTON, J.   The plaintiff brings this action as administrator *de bonis non* of the estate of James Crosby to recover of the defendant the balance due on a deposit made by Crosby with the defendant bank in 1861. The plaintiff's intestate died in November, 1868, and the identity of the depositor with the plaintiff's intestate was found by the court, and seems to be satisfactorily established by the testimony as reported. The defendant, indeed, substantially admits it. The defence is that certain requirements of the by-laws have not been complied with, — principally those relating to the production of the book as a condition of payment, and to the notice to be given of a withdrawal of principal or interest, and to a bond of indemnity. There are also exceptions to certain rulings asked and not given, and to certain rulings that were made.

The court found that the book was destroyed by fire in 1867. The defendant contends that the evidence did not warrant the finding. There was evidence tending to show that there was a fire in 1867 in the house occupied by the plaintiff's intestate, and that a good many of his papers were destroyed. The treasurer of the defendant bank testified that he had been connected with the institution for twenty-five years, and that no one had demanded payment of the account or had presented the book. There was also evidence that some time between April, 1863, and October, 1875, notice was given, though it did not appear by whom, that the book was lost. We cannot say upon this evidence that the most reasonable way of accounting for the non-production of the book was not that it was destroyed amongst other papers in the fire that occurred in the house occupied by the plaintiff's intestate in 1867, or that a finding that it was so

destroyed was clearly erroneous. This finding disposes of the second, third, and fourth of the defendant's requests. The book having been destroyed, the plaintiff was thereby excused from producing it; and those requests which were based upon the necessity of presenting the book in order to obtain payment were, therefore, rightly refused. *Warhus* v. *Bowery Savings Bank*, 21 N. Y. 543. The court also found that the bank through its treasurer had waived the right to any other or further notice of withdrawal than such as was given before the commencement of this action. This finding disposes of the sixth of the defendant's requests. The court gave the first and fifth rulings asked for by the defendant. The remaining requests, except the last one, which was that on all the evidence the plaintiff could not recover, so far as they involve matters not already referred to, relate to the plaintiff's right to recover without tendering a bond of indemnity, and without payment having been ordered by the investing committee, as they were authorized to do by Article 26 of the amended by-laws in case of satisfactory proof of the loss or destruction of a book. This by-law was adopted long after the plaintiff's intestate had made the deposit in question, at which time he signed a deposit book assenting to the regulations and by-laws then in force and to " those which may be hereafter made pursuant to the power granted in the third article." The third article provided for further regulations or by-laws, or alterations of those already made, and that " all such regulations, by-laws, and alterations shall be equally binding on all depositors as those by them subscribed, after the same shall have been duly made known." There is nothing to show that Article 26 of the amended by-laws was ever made known to the plaintiff's intestate or to any one having any authority to represent him or his estate, or that any steps were taken to make it known to him or them. Without undertaking to say what would constitute a making known to depositors of subsequent amendments or alterations within the meaning of Article 3, we think that neither the intestate nor any one representing him or his estate can be held bound by Article 26 of the amended by-laws under the circumstances disclosed in this case, and that so far as the defendant relies upon that by-law it must fail. See *Kimins* v. *Boston Five Cents Savings Bank*, 141 Mass. 33.

The question of identity having been settled in favor of the plaintiff, and the defendant substantially admitting the identity of the depositor with the plaintiff's intestate, and the court having found that the book had been destroyed, there would seem to be no good reason why, on general principles, the plaintiff should be required to furnish a bond of indemnity as a condition of payment by the defendant.

What we have said disposes, we think, of the objections urged by the bank to the rulings of the presiding justice and to the refusals to rule as requested.                   *Exceptions overruled.*