SOCIETE DE BIENFAISANCE ST. JEAN BAPTISTE DE MILLBURY *vs.* WORCESTER COUNTY INSTITUTION FOR SAVINGS.

SAME *vs.* PEOPLE'S SAVINGS BANK.

Worcester.   October 1, 1917. — November 30, 1917.

Present:· BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Savings Bank. Contract,* Construction. *Bills and Notes,* Payment on forged order. *Pleading, Civil,* Equitable defence, Set-off.

Where a depositor in a savings bank assents at the time of his first deposit, in accordance with a notice printed on his bank book, "to all the regulations of the institution," this does not incorporate in his contract with the bank a by-law subsequently adopted, without the knowledge of the depositor, that, "When a deposit book has been lost or destroyed, immediate written notice should be given to the treasurer . . .· the corporation will not be responsible for loss sustained, when a depositor has not given notice in writing of his book having been stolen or lost, if payment be made in whole or in part on account of such book on presentation."

A depositor in a savings bank is not bound by a by-law of the bank, passed without his knowledge about four years after the contract of deposit was made, that "Any payment made to any person who presents a deposit book of this bank,

or who shall present an order for the payment of money accompanied with such deposit book purporting to have been signed by the person to whom such book belongs, shall be deemed to be for the Bank as good and effectual a payment as that made to the owner of such deposit book."

In an action by a fraternal beneficiary corporation against a savings bank for the amount of deposits drawn out by the plaintiff's treasurer upon forged orders, remissness of the plaintiff's auditors, in failing to discover by semiannual or quarterly examinations of the treasurer's accounts that the treasurer was misappropriating the funds of the corporation or was obtaining money from the savings bank on forged orders, is not evidence that the corporation participated in the treasurer's fraud, and does not require a finding that the corporation was so negligent in failing to discover the fraud as to lose its right to recover the amount paid by the bank on the forged orders.

In the case stated above the defendant relied, as an equitable defence under R. L. c. 173, § 28, on the facts that the plaintiff's dishonest treasurer, who drew $3,345 on forged orders out of the savings bank, used for himself only $250 and deposited the remaining $3,095 in the plaintiff's name and to its credit in a national bank, and that the money thus deposited was used in paying sick benefits and other legal obligations of the plaintiff. The plaintiff never offered to return any part of the deposit to the defendant savings bank. The judge who heard the case ruled that the plaintiff could recover only $250. *Held*, that the ruling was right.

In the case described above the plaintiff did not demur to the equitable defence on the ground that the remedy at law was plain and adequate, and it was *said* that it was unnecessary to consider whether the defendant could have recovered under a declaration in set-off for money had and received.

Two ACTIONS OF CONTRACT by a fraternal beneficiary corporation, each brought against a savings bank for the amount of a deposit and dividends. Writs dated respectively July 29 and September 7, 1915.

In the Superior Court the two cases were tried together before *Sanderson,* J., without a jury. The evidence in each of the cases is described in the opinion. At the close of the evidence in each case the defendant asked the judge to order a verdict for it. This the judge refused to do. The defendant in the first case then asked for twenty-three rulings and a supplemental ruling, and the defendant in the second case asked for substantially the same rulings and also for two others numbered twenty-four and twenty-five. The judge in both of the cases made certain of the rulings requested. The others were as follows:

"10. The direction 'Pay Treasurer, etc.,' on the plaintiff's pass book did not forbid nor prevent the defendant paying the deposit or any part thereof to the plaintiff itself without such order or upon a forged or invalid order or render it liable thereby."

"12. If the direction 'Pay Treasurer, etc.,' constituted a term of the contract between the plaintiff and the defendant, so that a payment could not be made to the plaintiff or to its use otherwise than in compliance with such direction, then upon all the evidence the defendant had reason to believe that the orders furnished it were valid or had been ratified, and the plaintiff is estopped to hold the defendant liable in this action.

"13. It was the duty of the plaintiff to furnish the defendant with the true signatures of its president, financial secretary and recording secretary for the time being and with a facsimile of its seal, and if it failed so to do, the defendant is not responsible for any loss thereby occasioned.

"14. A corporate seal is ordinarily in the custody of the secretary and the defendant bank was not guilty of negligence in honoring an order bearing the corporate seal, attested by what purported to be the signature of the recording secretary, when such order was presented by one who was not such secretary.

"15. The defendant had the right to assume that the plaintiff's corporate seal was in the custody of its proper officer and by him placed on orders presented to the defendant and the defendant had the right to honor an order bearing the impression of the corporate seal upon it, and is not guilty of negligence in so doing, even if the signature to such order were forged."

"19. There is no evidence tending to show that the defendant failed to use due diligence in making the payments in question.

"20. The defendant is not responsible if a criminal act of the plaintiff's agent caused loss to the plaintiff.

"21. If it shall appear that by proper audit or otherwise the plaintiff could have discovered the drafts made by its agent on the defendant bank and it failed so to discover them, the defendant is not responsible.

"22. The plaintiff is guilty of such negligence as bars it from recovery.

"23. The plaintiff is bound by the by-laws of the defendant bank existing at the time of its first deposit and any changes thereafter made thereto.

"24. The defendant had a right to assume that the signatures on the signature card presented to it by the plaintiff's treasurer were genuine.

"25. It is no evidence of negligence on the part of the defendant if it relied on the signature card presented by the defendant's treasurer purporting to bear the signatures of the proper officers and an impression of its seal, even if said signatures were not genuine and were forged."

The judge refused to make any of the rulings quoted above, and the defendant in each case excepted.

The judge ruled in substance that the plaintiff could not recover for so much as was paid to the treasurer, either in checks or in cash, which the treasurer deposited to the plaintiff's account in the Millbury National Bank, but that it could recover for so much as was paid to the treasurer in cash which he did not deposit to the account of the plaintiff in the national bank and which he misappropriated. The plaintiff excepted in each case to so much of the judge's ruling as stated that the defendant was not liable for the money withdrawn by the treasurer which he deposited to the account of the plaintiff in the national bank.

The judge found for the plaintiff in each of the cases, in the first case in the sum of $78.53 and in the second case in the sum of $246.41. In each of the cases the plaintiff and the defendant both alleged exceptions.

*G. S. Taft,* for the plaintiff.

*G. A. Gaskill,* for the defendants.

BRALEY, J. The rights of the parties apart from the equitable defence depend on the terms of the contracts that were made, as shown by the record, when the accounts were opened. *Wall* v. *Provident Institution for Savings,* 6 Allen, 320. *Wallace* v. *Lowell Institution for Savings,* 7 Gray, 134, 137. *White* v. *Franklin Bank,* 22 Pick. 181. *Heath* v. *New Bedford Safe Deposit & Trust Co.* 184 Mass. 481, 483.

In the first case it is unnecessary to decide whether the bank would have been exonerated if article one of the by-laws had been inserted in the contract, that, "When any money is withdrawn, the book given to the depositor must be brought to the Bank to have the amount entered therein. If the book has been lost or destroyed, written notice must be given to the Treasurer, and if the loss shall be proved to the satisfaction of the Board of Investment, they may direct the account to be paid without the book; but the Institution will not be responsible for loss sustained if payment is made on

presentation of the book with a spurious order, if such notice has not been given and received," for the by-law as printed in the deposit book reads, "When a book is lost, the owner thereof must give immediate notice to the treasurer, otherwise the institution will not be responsible if the money should be paid upon a forged order accompanied by the book." *Goldrick* v. *Bristol County Savings Bank*, 123 Mass. 320. *Donlan* v. *Provident Institution for Savings*, 127 Mass. 183, 185. Nor did the plaintiff's written assent by its treasurer at the time of deposit, "to all the regulations of the Institution," read into the contract the by-law subsequently enacted, of which the plaintiff had no knowledge, that "When a deposit book has been lost or destroyed, immediate written notice should be given to the Treasurer. As the officers of the Institution may be unable to identify every depositor, the Corporation will not be responsible for loss sustained, when a depositor has not given notice in writing of his book having been stolen or lost, if payment be made in whole or in part on account of such book on presentation. In all cases, a payment upon presentation of a deposit book shall be a full and complete discharge to the Corporation for the amount so paid." *Kimins* v. *Boston Five Cents Savings Bank*, 141 Mass. 33. *Hudson* v. *Roxbury Institution for Savings*, 176 Mass. 522. It is plain that, independently of the finding that the defendant had been negligent, the bank is responsible for the payments made on the forged orders of the plaintiff's treasurer, even if when the payments were made the deposit book was presented. *Jochumsen* v. *Suffolk Savings Bank*, 3 Allen, 87. *Kingsley* v. *Whitman Savings Bank*, 182 Mass. 252, 254.

What has been said also disposes of the defence urged in the second case, where the contract and deposit were made on July 6, 1898, and the by-law that, "Any payment made to any person who presents a deposit book of this Bank, or who shall present an order for the payment of money accompanied with such deposit book purporting to have been signed by the person to whom such book belongs, shall be deemed to be for the Bank as good and effectual a payment as that made to the owner of such deposit book," was passed on February 4, 1903, by which the plaintiff, who had no knowledge of it was not bound, and the original contract remained unaffected.

It is further contended, that the plaintiff is estopped by its neg-

ligent failure to discover the treasurer's peculations. Doubtless the plaintiff is charged with knowledge of the entries in its books of account. *Allen* v. *Puritan Trust Co.* 211 Mass. 409, 420. The plaintiff's auditors, however, who either semiannually or quarterly examined the treasurer's accounts, did not discover that the treasurer was misappropriating the funds or obtaining money from the defendants on forged orders until after July 15, 1914, although, if they "had made a reasonably careful examination of the treasurer's accounts, and had made an investigation to determine the amount on deposit in the defendant bank, they would have discovered at each examination after November 6, 1912, that the treasurer was withdrawing money without authority."

But the judge found generally for the plaintiff. The remissness of the auditors is not evidence of the plaintiff's participation in the treasurer's fraud, and as matter of law it furnishes no justification to the defendants to deprive the plaintiff of its property through honoring forged orders. *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268, 281.

But, if the defence of payment and of estoppel fall away, the defendants also severally answered, that it would be inequitable to permit the plaintiff to recover, and that they should be absolutely and unconditionally relieved from the respective claims. R. L. c. 173, § 28. And, no question having been raised as to whether an equitable defence had been pleaded properly, the presiding judge ruled that the plaintiff's demands should be reduced proportionally, to which rulings the plaintiff excepted. The forged orders on both banks aggregated $3,345, of which the defaulting treasurer used or appropriated $250, the remaining $3,095 was deposited by him in the plaintiff's name and to its credit in the Millbury National Bank. The judge found and ruled that of the total amount the plaintiff could recover only $250. The method by which the embezzlement was accomplished is described as follows: "Bazinet embezzled from the plaintiff money which he collected from members and other income of the society to an amount at least equal to the sums which he withdrew from the defendant bank. The sums thus collected and embezzled were not deposited to the credit of the society. By using the money withdrawn from the defendant bank to pay the obligations of the plaintiff, Bazinet was enabled to postpone the time when his embezzlements would be

discovered." It was decided in *Barton* v. *Radclyffe,* 149 Mass. 275, that to maintain an equitable defence under the statute, "such defence must be one within the rules and principles of equity jurisprudence." While in the beginning the treasurer alone knew of the transactions, the defendants upon discovery of the fraud could have maintained an action to recover back the money from the plaintiff, who constructively, if not actually, came into possession when the deposits were made in the national bank in its name from which from time to time sick benefits and other legal obligations of the plaintiff were satisfied. *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268, 272–274. *Foote* v. *Cotting,* 195 Mass. 55, 61, 62. Accordingly the money of the defendants to the extent shown by the record not only has gone in satisfaction of the plaintiff's legitimate pecuniary obligations, but, upon its discovery of the source from which the funds had been obtained, no offer of restitution ever was made. Or, if otherwise put, the defendants under the contracts owe the amount of the deposits with interest. But the plaintiff already has received and appropriated to its own use moneys of the defendants nearly equal to the deposits.

It is unnecessary to determine whether the defendants could have pleaded in set-off for money had and received. See *Foote* v. *Cotting,* 195 Mass. 55, 63. The plaintiff did not demur to the equitable defence, that the remedy at law was plain and adequate, and it is plain that the defendants could have maintained a bill for an accounting in which relief could have been given by a money decree. *Newell* v. *Hadley,* 206 Mass. 335. *Bremer* v. *Williams,* 210 Mass. 256. The defendants therefore can avail themselves of this defence, under which a double amercement is averted, with full satisfaction of the plaintiff's contractual demands. We have examined all of the alleged errors, and, finding no grounds for reversal, the exceptions of each party should be overruled.

*So ordered.*