METROPOLITAN TRUST COMPANY *vs.* FEDERAL TRUST COMPANY & others.

Suffolk.   January 16, 1919. — March 1, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Equity Jurisdiction*, Unlawful enrichment. *Bills and Notes.*

In a suit in equity by a trust company against another trust company and two dishonest bookkeepers, one of the plaintiff and the other of the defendant, to recover the sum of $15,000, it appeared that the dishonest bookkeeper of the defendant trust company had embezzled the sum of $15,000 from his employer and that, in order to make good this amount and thus conceal his embezzlement, by means of conspiracy with a bookkeeper of the plaintiff he drew a forged

check for $15,000 upon the account of a depositor in the plaintiff trust company payable to the defendant trust company, which was paid by the plaintiff through the clearing house, with good faith on the part of everybody except the two dishonest bookkeepers, and it was *held* that the defendant trust company, thus having in its possession $15,000 of the plaintiff's money for which it had given no equivalent to the plaintiff and for which it had incurred no liability to any third person, must restore that amount of money to the plaintiff, the fact that the defendant trust company had acquired the plaintiff's money in good faith giving it no right to retain it as against the plaintiff.

In the same case it was *held* that a rule of the clearing house that "All checks, drafts, notes or other items sent through the Clearing House and found not good, missent, lacking endorsement or otherwise irregular, shall be returned directly to the bank from which they were received," had no application, because the discovery of the forgery was not made in time to enable the plaintiff to return the check under the rule, and that the case must stand as if the payment had been made directly at the plaintiff's counter in the ordinary manner.

BILL IN EQUITY, filed in the Superior Court on May 24, 1917, by the Metropolitan Trust Company, a corporation having its principal office in Boston, against the Federal Trust Company, also a corporation having its principal office in Boston, Arthur E. Abbott, formerly employed by the defendant as a bookkeeper, and Albert Eugene Wood, formerly employed as a bookkeeper by the plaintiff, alleging that by conspiracy, fraud and falsification of accounts by the defendants Abbott and Wood, the plaintiff was caused to pay to the defendant corporation the sum of $15,000, which amount previously had been embezzled from the defendant corporation by the defendant Abbott, praying (1) for judgment against the defendants Abbott and Wood in the amount of $15,000, (2) for judgment against the defendant corporation in the amount of $15,000 or in such other amount as might be found to be due to the plaintiff from that defendant, and (3) to be subrogated to any rights of the defendant corporation against any funds or property of the defendant Abbott attached by the defendant corporation.

The defendants Abbott and Wood having been defaulted, an order was made that the bill be taken as confessed against each of those defendants.

In the Superior Court the case was heard by *Wait*, J., the evidence being reported by a commissioner appointed under Equity Rule 35. The judge made thirty-seven findings of fact, including those which are stated in the opinion. The judge found "that neither party was negligent; that both trust companies acted in

good faith; and, if material, that the plaintiff knew of the rule of the clearing house quoted in the answer." This rule is quoted in the opinion.

By order of the judge a final decree was entered against the defendants Abbott and Wood and also ordering the defendant Federal Trust Company to pay to the plaintiff the sum of $16,050 and interest from the entry of the decree. The defendant Federal Trust Company appealed.

*J. E. Cotter & J. P. Fagan,* for the defendant Federal Trust Company, submitted a brief.

*H. Williams, Jr., (C. L. Boyer* with him,) for the plaintiff.

BRALEY, J. The bill having been taken for confessed against the individual defendants, the trust company appealed from the decree establishing the plaintiff's claim. The plaintiff within the issue raised by the pleadings was properly allowed to show all of the various financial transactions with which Abbott, the defendant's employee, had been connected, even if in some instances their bearing on his defalcations may have been somewhat remote. The extent of the inquiry into collateral or immaterial matters also was largely within the discretion of the judge, which does not appear to have been exercised to the defendant's prejudice, and on going over the record, it is manifest, that all the material facts are supported by evidence, to the admission of which no exceptions were saved. While the testimony was taken by a commissioner, the thirty-seven findings made by the judge, not appearing to have been plainly wrong, are to be treated as conclusive.

It is found that Abbott, employed as a bookkeeper by the defendant trust company hereafter referred to as the defendant, began systematically to steal from his employer, and by a series of false entries succeeded in concealing his withdrawals until he had abstracted $11,800, when he became acquainted with one Wood, employed by the plaintiff as a bookkeeper. The two then planned a scheme to defraud their respective employers, and as a result of their misdoings the present suit was brought after the plaintiff discovered that it had been defrauded of $15,000 through the payment of a check for that amount forged by Abbott. The transactions by means of which the plaintiff's money was obtained do not appear to have been very much, if at all, in controversy. Abbott made fictitious entries on the defendant's ledger as of

a certain date crediting various depositors with an aggregate amount of $15,000. By the use of these fictitious entries of deposits, fraudulent withdrawals of money by him and previously charged against the same depositors were balanced and the shortage concealed. If Abbott however in confederacy with Wood could obtain $15,000 from the plaintiff he would be able to make good his defalcations. He accordingly forged a check for $15,000 drawn on the plaintiff in the name of a depositor whose account was in that part of the ledger over which Wood had supervision, and Wood, knowing that a check of this character would be presented, took care to intercept it so that the fraud would not be discovered by any of the plaintiff's officers. A bundle of checks came into the plaintiff's banking house from the clearing house on May 11, 1917, and Wood, who had been informed by Abbott that the check in question had been drawn, was awaiting its appearance, and finding it on top of the bundle, at once placed the check at the bottom, and, after calling it off to the boy who ran the adding machine, put it in his pocket. It never was seen thereafter by any of the plaintiff's employees except Wood, who in the afternoon of the same day gave the check to Abbott, and there is no evidence showing what disposition Abbott made of it. It is unnecessary to describe the method whereby Wood sought to cover up his own wrongdoing, or the plaintiff's detection of his conduct, or to comment further on the way in which Abbott accomplished his purpose. The result is plain. The defendant has in its possession $15,000 of the plaintiff's money for which it has given no equivalent to the plaintiff. It moreover has neither paid, nor is it under any liability to pay any person whatsoever the whole or any part of the amount.

But, notwithstanding these facts, the defendant contends, that, not having been negligent and having acted in good faith, it can retain the money in satisfaction of Abbott's defalcations, especially as it never received notice under the rules of the clearing house that the check was not good. It is argued, that the effect of the transaction is the same as if Abbott himself had gone to the plaintiff and obtained payment of the check from a teller acting in collusion with him, and then had paid the money to the defendant, who received it in good faith and in satisfaction of his

own defalcation.   But under the doctrine of *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268, 276, if Abbott was a defaulter and his defalcation was at the time of the transaction unknown and unsuspected by the defendant when he stole the plaintiff's money and placed it with the defendant's funds to cancel and make good his own peculations, and, no other officer or employee knowing the facts, the defendant retained the money as its own, it did not thereby acquire a good title to the money as against the plaintiff, the true owner, but the latter can recover the money back.   *Indian Head National Bank* v. *Clark,* 166 Mass. 27, 31. *St. Jean Baptiste Societe* v. *Worcester County Institution for Savings,* 228 Mass. 556.

The case of *Craft* v. *South Boston Railroad,* 150 Mass. 207, cited by the defendant, calls for no comment.   It is not an authority supporting the defendant's contention, as fully explained in *Newell* v. *Hadley,* 206 Mass. 335, 345.   The defendant, furthermore, if it claims the benefit of Abbott's fraud practised upon the plaintiff, must in addition accept the burden of Abbott's guilty knowledge. *Atlantic Bank* v. *Merchants' Bank,* 10 Gray, 532.   *Newell* v. *Hadley, supra.   St. Jean Baptiste Societe* v. *Worcester County Institution for Savings,* 228 Mass. 556, 562.   And the cases of *Kelley* v. *Lindsey,* 7 Gray, 287, *Railroad National Bank* v. *Lowell,* 109 Mass. 214 and *Agawam National Bank* v. *South Hadley,* 128 Mass. 503, on which it further relies, are not in point.

The defendant finally contends that it is exonerated under a rule of the clearing house, that "All checks, drafts, notes or other items sent through the Clearing House and found not good, missent, lacking endorsement or otherwise irregular, shall be returned directly to the bank from which they were received, and this bank shall immediately refund to the bank returning the same, in specie or legal tender notes, the amount received through the Clearing House for said items thus returned to it.   Except on Saturdays, all such returned items shall be delivered not later than one o'clock P. M.; and on Saturdays not later than twelve o'clock noon."   The right of return secured by this rule "is a special provision in compensation for payment without inspection."   But where the discovery of the forgery, as in the present case, was not made in time to enable the plaintiff to return the check as of absolute right under the rule, "the case must stand as if the payment had been

made directly at the plaintiff's counter, in the ordinary mode." *National Bank of North America* v. *Bangs,* 106 Mass. 441, 443. *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397. If thus treated, it is settled that the plaintiff's failure to comply with the rule is under the circumstances shown by the record no bar to the maintenance of the bill. *Merchants' National Bank* v. *National Bank of the Commonwealth,* 139 Mass. 513. *Minneapolis National Bank* v. *Holyoke National Bank,* 182 Mass. 130. We discover no error of the trial court in the rulings of law, and, the plaintiff being entitled to full restitution, the decree should be affirmed with costs of the appeal.

*Ordered accordingly.*