# CASES

## THIRD DISTRICT

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1924

---

First State Bank and Trust Company of Canton, Appellant, v. First National Bank of Canton, Appellee.

### Gen. No. 7,659.

1. NEGOTIABLE INSTRUMENTS—*when money paid by drawee on forged indorsement recoverable.* Where a drawee or a bank pays a bill of exchange or a bank check to an indorser who derives title through a prior forged indorsement he may recover the money so paid, on discovery of the forgery, provided he makes demand for repayment within a reasonable time after the discovery of such forgery.

2. NEGOTIABLE INSTRUMENTS—*when bank receiving forged check on deposit is bona fide holder.* The drawee bank having cashed a check is estopped from denying the signature of the drawer for the purpose of creating a liability against a prior indorser but that rule does not actually change the nature of the check and render it genuine, modify the qualifications of a holder in due course or shift the burden of proof as to the *bona fides* of the transaction

(39)

where the check is in the hands of a holder receiving it from one whose title is defective.

3. NEGOTIABLE INSTRUMENTS—*right of drawee bank against holder of forged check cashed by such holder.* Where a bank cashed a forged check drawn on another bank paying part of the amount to the person who presented and indorsed it and entering the balance to his credit in a checking account and afterward collected the face of the check from the drawee bank through a clearing house the drawee, upon discovering the forgery, is entitled to recover from the other bank at least the amount not paid out by it, but placed in and remaining in the checking account.

4. BANKING—*rights inter se of negligent drawee bank and bank negligently cashing forged check.* Where a patron of appellant bank was negligent in not discovering that a check purported to be signed by it was a forgery for over 60 days after the check had been returned to it and appellee bank was negligent in accepting the check and paying cash upon it, neither bank can acquire any rights against the other growing out of such negligence.

5. BANKING—*applicability of clearing house rules to forged paper.* Clearing house rules limiting the time within which a check must be returned are not to be construed as applying to a forged check.

6. BANKING—*when negligence of depositor in discovering forgery of check chargeable to depository.* Where appellee bank negligently accepted a forged check for $810 purported to have been drawn by a customer of appellee bank, paying to the indorser $310 in cash and crediting him with $500 in a checking account which he opened, and appellee paid to appellant the full amount of the check and the customer of appellee was negligent in not discovering the forgery until more than 60 days after the check was returned to it, its negligence was chargeable to appellee and the latter could recover from appellant only the amount of $500 remaining with it to the credit of the fraudulent indorser, with interest thereon.

Appeal by plaintiff from the Circuit Court of Fulton county; the Hon. WALTER C. FRANK, Judge, presiding. Heard in this court at the October term, 1923. Reversed. Opinion filed January 10, 1924. Rehearing denied April 9, 1924.

A. E. TAFF, HARVEY H. ATHERTON and GLENN RATCLIFF, for appellant.

BURNETT M. CHIPERFIELD and CLAUDE E. CHIPERFIELD, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an appeal from the circuit court of Fulton county. Appellant bank brought suit against appellee, both being situated in the City of Canton, in said county, to recover the moneys paid by appellant bank to appellee bank for a forged check purporting to have been drawn upon appellant bank.

On the second day of September, 1921, a person representing himself to be "A. P. Holt," appeared at appellee bank with a check purporting to have been drawn by the Fiatt Farmer's Co-operative Company, "by Willard Barclay, Mgr.," for the sum of $810 and payable to the order of "A. P. Holt," drawn upon appellant bank, and presented said check for payment. The person so appearing indorsed the check on the back thereof, by writing the name "A. P. Holt" across the back of said check, and appellee bank paid the sum of $310 in cash to the presenter of said check and gave him credit for the sum of five hundred in a checking account, entered in the name of "A. P. Holt" and the presenter of the check signed a bank memoranda card by signing the name "A. P. Holt" upon the card and "R. 2, date Sept. 2nd, 1921." The check was dated September 1st, 1921, and on the 2nd day of September, after appellee had taken said check from the party calling himself "Holt," the same was paid by appellant bank to the appellee, through the Clearing House of Canton and was stamped "Paid—Canton Clearing House Sep. 2, 1921, to First National Bank, Canton, Illinois." The check was a forgery. It was never issued by the Fiatt Farmer's Co-operative Company and was never signed by Willard Barclay or any other persons connected with said company.

The check was presented at appellee bank to Mr. F. Lee Waltz, a clerk of the bank, having been clerk of the bank for seven years. Mr. Waltz, on the trial, had

no recollection of the party who presented the check. He remembered a transaction of the same amount and name at about that time, but has no further recollection in regard to the matter. He is not able to say that the party was introduced to him by anyone in the bank. He says the transaction was quite uncertain in his mind and his recollection not clear, and while he testifies that his best judgment is that he was introduced to him through some one of the officers of the bank, he is not able to describe the man "Holt," and he has no recollection of the circumstance, except as to the name and amount of the check. There is no evidence in the record showing, or tending to show, that on September 2, 1921, or since that time, the appellee bank ever did anything to identify the party who presented the check to its bank. Waltz testifies as to what his judgment is, but states no facts as to the identification of Holt and from his other testimony it is evident that Waltz is testifying to his custom, rather than to his recollection of the holder of this check. The forgery of this check was not discovered until early in December following, when, upon an examination of the accounts and vouchers of the Fiatt Farmer's Co-operative Company, by an auditor, the error was discovered and appellant bank repaid to the Co-operative Company the amount of said check, which had been charged to it, and on December 6, 1921, the appellant bank furnished the appellee bank with all the information and facts in regard to the forgery of said check, and appellant bank tendered back the spurious paper on December 24, 1921, to appellee bank and demanded a return of the money paid appellee bank thereon.

It was shown on the hearing that the appellee bank did not know anything about the party presenting said check under the name of "Holt"; had not known him before the cashing of said check and had never heard from him since, and that the said deposit for

$500 still remained on deposit in appellee bank, credited to the said "A. P. Holt."

On the trial there was a waiver of jury and the cause was submitted to the court and upon the proofs being presented the court below found for the appellee bank and dismissed appellant's suit and entered judgment for the defendant.

Appellant, plaintiff below, offered testimony to show that on the same date, September 2, 1921, a party giving his name as "A. B. Dorn," having a similar check, for about the same amount, and purporting to have been executed by the same maker, payable to "A. B. Dorn" presented himself at the Canton National Bank in the same city and gave his name as "A. B. Dorn," and stated to the cashier that he lived in the country near Fiatt, west of Canton, and in the presence of the cashier indorsed the check by writing the name "A. B. Dorn," across the back of said check. There was a third check, of a similar nature, and nearly like amount, made payable to one "A. S. Henson," purporting to have been executed by the Fiatt Farmer's Co-operative Company, presented by a party to the appellant, plaintiff bank, on the same day, and this party wrote the name "A. S. Henson," across the back of this check. All three checks were forgeries and appellant produced the three checks, so identified, and offered an expert witness to testify from the examination of the "Dorn," "Holt" and "Henson" signatures on the back of said respective checks, that, in his opinion, they, the said three indorsements, were all executed by the same person. The court excluded this testimony upon the objection of appellee.

As to the $500 left upon deposit in appellee bank by "Holt," which appellee still has and has never paid out to any person, the testimony is uncontradicted and conclusive that the check was a forgery. Appellant contends that appellee is in the position

44 APPELLATE COURTS OF ILLINOIS.

First State Bk. & Tr. Co. v. First Nat. Bk., 234 Ill. App. 39.

of having the check negotiated to it through a holder, whose title was defective, and that appellee was not a holder in due course as to said sum of $500 under sections 55 and 59 of the Negotiable Instrument Act [Cahill's Ill. St. ch. 98, ¶¶ 75, 79], and that appellant in any event should have judgment in the sum of $500.

It is contended by the appellee and numerous authorities are cited to support the doctrine, that as between the drawee and a good faith holder of a check, the drawee bank is to be deemed the place of final settlement, where all prior mistakes and forgeries shall be corrected and settled once for all, and if overlooked, and payment is made, it must be deemed final. There is no doubt about this principle, contended for by appellee, when the indorsements are all genuine and payment of the check is made by the drawee to a holder in due course, but appellee to sustain the principle cited, quotes *First Nat. Bank of Quincy v. Ricker,* 71 Ill. 439, and *First Nat. Bank v. Northwestern Nat. Bank,* 152 Ill. 296. These authorities are the only cases in Illinois cited by appellee upon this principle and the appellant also relies upon the later case as applying to the facts in this case.

In *First Nat. Bank of Quincy v. Ricker, supra,* the court treats generally of the good faith required to be exercised by the holder of the check.

In *First Nat. Bank v. Northwestern Nat. Bank, supra,* it was held:

"The estoppel, however, of which we have spoken, applies only to the case of the signature of the drawer, and of the drawer alone. A drawee is bound to know the signatures of his own customers, and a bank is bound to know the signatures of those who deposit with it and draw checks against such deposits. But the drawee or bank is not chargeable with knowledge of any other signature on the bill of exchange or bank check, and by accepting or paying the bill or check does not admit the genuineness of any endorsement on it. 2 Daniel on Neg. Inst. secs. 1364, 1365; *Marine*

*Nat. Bank v. National City Bank,* 59 N. Y. 67; *Canal Bank v. Bank of Albany,* 1 Hill (N. Y.) 287; *Vagliano v. Bank of England,* L. R. 22 Q. B. Div. 103; *Vagliano v. Bank of England* (on appeal), L. R. 23 Q. B. Div. 243. And even if a drawer draws a bill or a check payable to himself or his own order, and at once endorses it, an acceptance or payment of it by the drawee admits only the genuineness of the drawer's original signature, but not the genuineness of his indorsement. 2 Parsons on Notes and Bills, 483; 2 Daniel on Neg. Inst. sec. 1365; *Beeman v. Duck,* 11 Mees. & Wels. 251; *Williams v. Drexel,* 14 Md. 566.''

\* \* \*

''When appellant endorsed the nine checks, and collected from appellee the sums of money called for by them, it warranted the genuineness of all the preceding signatures endorsed on the respective checks, including the endorsements on the checks of the names of the respective payees named in such checks. (2 Parsons on Notes and Bills, 588; *Williams v. Tishomingo Sav. Institution,* 57 Miss. 633; Story on Bills of Exchange, sec. 225.) And where a drawee or a bank pays a bill of exchange or a bank check to an endorser who derives title through a prior forged endorsement, he may recover back the money so paid, on discovery of the forgery, provided he makes demand for repayment within a reasonable time after the discovery of such forgery. 2 Daniel on Neg. Inst. secs. 1364, 1372; *Canal Bank v. Bank of Albany,* 1 Hill (N. Y.) 287; *Williams v. Tishomingo Sav. Institution, supra.''*

But appellee relies strongly upon a line of cases such as *State Bank of Chicago v. First Nat. Bank of Omaha,* 87 Neb. 351, 127 N. W. 244, 29 L. R. A. (N. S.) 100, and *State Bank v. Cumberland Savings & Trust Co.,* 168 N. C. 605, 85 S. E. 5, L. R. A. 1915 D 1138, where the rule is laid down in the note to *State Bank of Chicago v. First Nat. Bank of Omaha, supra:*

''The later cases support the rule that a drawee cannot recover money paid to a *bona fide holder* on a forged check or draft and in most of the cases the decision is based on the ground of estoppel.''

But it is to be noticed that the language used is: *"Bona fide holder"* otherwise the construction contended for by appellee would permit forged and spurious paper to circulate under the semi-protection of the law and prey upon and penalize every drawee, who, by accident or mistake, might be duped by the fraud, whether any other person was injured or not. The Negotiable Instrument law has provided for just such a case. Section 54 of that Act [Cahill's Ill. St. ch. 98, ¶ 74] provides:

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

This section means just what it says and is worded so plainly that it is not susceptible to any ambiguity. Section 54, *supra,* governs, "Rights of the Holder" of an instrument that has been negotiated or transferred to the holder, the appellee in this case, and whether the drawee bank, appellant, was or became a transferee by cashing the check, has nothing to do with the case. Appellee bank by writing a credit upon its books as a purported consideration for a forged check, did not assume the relation of debtor, trustee or agent for any person, and cannot assume the control of any vested right, either for itself or "Holt," by such a transaction. *Woodhouse v. Crandall,* 197 Ill. 104; *Otis v. Gross,* 96 Ill. 612; *Ward v. Johnson,* 95 Ill. 215; *American Exch. Nat. Bank v. Loretta Gold & Silver Mining Co.,* 165 Ill. 103.

While it is true that appellant bank, being drawee in the check and having cashed the same, is estopped from denying the signature of the drawer, for the purpose of creating a liability against the appellee, yet this rule of law does not actually change the nature of the check and render it genuine, modify the qualifications of a holder in due course, or shift the burden of

proof as to the *bona fides* of a transaction, where a check is in the hands of a holder receiving it from one whose title is defective.

Appellant should have been given judgment in the court below for at least the sum of $500.

Was appellant a holder in due course as to the $310 paid in currency on the check?

There are few cases in our courts bearing directly upon this question. In *First Nat. Bank of Quincy v. Ricker,* 71 Ill. 439, it is held that the drawee must be presumed to know his correspondent's signature, but it is also held:

"The rule, however, presupposes the good faith of the transaction, that the holder was a purchaser *bona fide* for a valuable consideration, for the law certainly is, the drawee or payor can recover where the payee or holder is himself at fault, or has been guilty of fraudulent practices which may have thrown him off his guard. The reason assigned for the decision in *Price v. Neale,* is, that the defendant had received the bills for 'a fair and valuable consideration, which he had *bona fide* paid, without the least privacy or suspicion. Here was no fraud, no wrong.' "

And in *First Nat. Bank v. Northwestern Bank, supra,* it was held on page 307:

"A drawee is bound to know the signatures of his own customers, and a bank is bound to know the signatures of those who deposit with it and draw checks against such deposits. But the drawee or bank is not chargeable with knowledge of any other signature on the bill of exchange or bank check, and by accepting or paying the bill or check does not admit the genuineness of any endorsement on it. 2 Daniel on Neg. Inst."

The whole subject is discussed in *First Nat. Bank of Pukwana v. Brule Nat. Bank of Chamberlain,* 38 S. D. 396, 161 N. W. 616, 12 A. L. R. 1079, and the decisions from all the states collected and in an opinion upon a rehearing the court say:

"The correct rule recognizes the fact that, in case

of payment without a prior aceptance or certification, the holder takes the paper upon the credit of the prior indorsers and the credit of the drawer, and not upon the credit of the drawee; that the drawee, in making payment, has a right to rely upon the assumption that the payee used due diligence, especially where such payee negotiated the bill or check to a holder, thus representing that it had so fully satisfied itself as to the identity and signature of the maker that it was willing to warrant as relates thereto to all subsequent holders. (Uniform Act, secs. 65 and 66.) Such correct rule denies the drawee the right to recover when the holder was without fault or when there has been some change of position calling for equitable relief. When a holder of a bill of exchange uses all due care in the taking of bill or check and the drawee thereafter pays same, the transaction is absolutely closed— modern business could not be done on any other basis. While the correct rule promotes the fluidity of two recognized mediums of exchange, those mediums by which the great bulk of business is carried on, checks and drafts, upon the other hand it encourages and demands prudent business methods upon the part of those receiving such mediums of exchange. *Pennington County Bank v. First State Bank*, 110 Minn. 263, 26 L. R. A. (N. S.) 849, 136 Am. St. Rep. 496, 125 N. W. 119; *First Nat. Bank v. State Bank*, 22 Neb. 769, 3 Am. St. Rep. 294, 36 N. W. 289; *Bank of Williamson v. McDowell County Bank*, 66 W. Va. 545, 36 L. R. A. (N. S.) 605, 66 S. E. 761; *Germania Bank v. Boutell*, 60 Minn. 189, 27 L. R. A. 635, 51 Am. St. Rep. 519, 62 N. W. 327; *American Exp. Co. v. State Nat. Bank*, 27 Okla. 824, 33 L. R. A. (N. S.) 188, 113 Pac. 711; *Farmers' Nat. Bank v. Farmers & Traders Bank*, L. R. A. 1915 A, 77, and note (159 Ky. 141, 166 S. W. 986).

"That the defendant bank did not use reasonable business prudence is clear. It took this check from a stranger without other identification than that given by another stranger; its cashier witnessed the mark of such stranger thus vouching for the identity and signature of the maker; and it indorsed the check as

'Paid,' thus further throwing plaintiff off guard. Defendant could not but have known, when negotiating such check and putting it into the channel through which it would finally be presented to plaintiff for payment, that plaintiff, if it paid such check, as defendant was asking it to do, would have to rely solely upon the apparent faith and credit that defendant had placed in the drawer. From the very circumstances of this case plaintiff had to act on the facts as presented to it by defendant, and upon such facts only.''

This rule is in accord with the holding in *First Nat. Bank of Quincy v. Ricker, supra,* and the other authorities in our state, and is not in contravention of the provisions of the Uniform Negotiable Instruments Act. The rule laid down satisfies the reason, and without reviewing all of the evidence in this case as to the circumstances under which appellee bank received the check in question, we have no question in saying that, so far as the evidence shows, appellee exercised no care or caution in accepting this check from a stranger. If appellant were not equally at fault in discovering the forgery, we should hold that appellee bank was chargeable with negligence and should suffer the total loss on this check. The check was cashed by appellant bank on September 2, 1921, and the forgery was not discovered and appellee bank notified until the 6th day of December following. In fact, three spurious checks, of about the same date and in substantially the same amounts, appeared in the account of the Fiatt Farmer's Co-operative Company in appellant bank on the same day, and it seems to be the carelessness or negligence of some one connected with appellant bank, or its customer, that this forgery was not discovered earlier. It was held in *Union Nat. Bank v. Farmers' & Mechanics' Nat. Bank,* 271 Pa. 107, 114 Atl. 506, 16 A. L. R. 1120, 1123:

"The opportunity to proceed at once against a forger is a valuable one, the deprivation of which by failure to give notice promptly conclusively deter-

50     APPELLATE COURTS OF ILLINOIS.

First State Bk. & Tr. Co. v. First Nat. Bk., 234 Ill. App. 39.

mines that loss has resulted, for there is no way by which it can be satisfactorily determined there was no loss (*Leather Manufacturers' Nat. Bank v. Morgan*, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; *McNeely v. Bank of North America*, 221 Pa. 588, 70 Atl. 891, 20 L. R. A. [N. S.] 79), unless it is shown there is on hand a fund belonging to the forger out of which defendant can reimburse himself in whole or in part (*Union Nat. Bank v. Franklin Nat. Bank*, 249 Pa. 375, 94 Atl. 1085; *United States Nat. Bank v. Union Nat. Bank*, 268 Pa. 147, 110 Atl. 792)."

It may be argued that appellant notified the appellee as soon as the fraud was discovered. It would seem that in a business of the character in which the Fiatt Farmer's Co-operative Company were engaged, the checking account at the bank would have been examined at least monthly and statements made by the bank to its customer, and it appears by the testimony of the cashier of appellant bank that a statement of account, with the check in question, was rendered to the Co-operative Company at the end of the month of September and that the Co-operative Company had had the check in its possession for over 60 days before it discovered the fraud. .

Under the testimony in this case, the patron of appellant was negligent in not discovering said fraud and appellee was negligent in accepting said check and paying cash upon it, and neither can acquire any rights against the other growing out of such negligence.

Appellee contends that, inasmuch as the appellant bank was the drawee of said check and that appellee was a holder in good faith, the drawee bank is to be deemed the place of final settlement, as before referred to.

Appellee's contention does not apply to the facts in this case. The rule would not apply if the indorsement of Holt were a forgery. *National City Bank v. National Bank of Republic of Chicago*, 219 Ill. App. 343, 349; *State Bank of Chicago v. Mid-City T. & S.*

*Bank*, 217 Ill. App. 87; *First Nat. Bank of Chicago v. Northwestern Nat. Bank of Chicago*, 152 Ill. 311; *Beattie v. National Bank of Ill.*, 174 Ill. 571; *Metropolitan Nat. Bank v. Merchants' Nat. Bank*, 182 Ill. 367, 372.

In this case the manager of the Fiatt Farmer's Co-operative Company testified that the check in question was found in the canceled September checks of the year 1921; that these checks were returned by the appellant bank to the Co-operative Company on the 5th day of October, 1921, but that the witness was too busy to examine the bundle of checks and did not discover the fraud until an auditing of the year's business was being had in the early part of December following. Under the law, it was the duty of appellant bank to notify appellee bank in apt time after the discovery of the fraud that the check was forged. In this case the delay, the negligence of the Fiatt Farmer's Co-operative Company, is chargeable to appellant bank. The appellee bank should have made further inquiry and exercised greater prudence than it did in the acceptance of the check from ''Holt.'' Appellee was negligent in this respect. Appellant is chargeable with negligence in that its customer did not discover the forgery for 60 days after the canceled check had been returned to the Company, and under such circumstances, in the opinion of this court, between the parties to this suit, it would be immaterial whether the indorsement of Holt was a forgery. Appellant should have discovered the fraud early in October, 1921, upon returning the check to its customer and in apt time notified the appellee. In determining this question, it must be presumed as to both parties that the original check was genuine. *First Nat. Bank v. Northwestern Bank, supra,* 311, p. 306.

It is suggested in appellee's argument that because the check in question was not returned within the time limited by the rules of the Canton Clearing House As-

52 APPELLATE COURTS OF ILLINOIS.

First State Bk. & Tr. Co. v. First Nat. Bk., 234 Ill. App. 39.

sociation, there can be no recovery. No case is cited in support of this proposition. It is not the law. In the states where the matter has been passed upon, it has been held that Clearing House rules limiting the time within which a check must be returned are not to be construed as applying to a forged check. *Metropolitan Trust Co. v. Federal Trust Co.*, 232 Mass. 363, 122 N. E. 413; *Merchants' Nat. Bank v. National Eagle Bank*, 101 Mass. 281, 100 Am. Dec. 120; *Corn Exch. Nat. Bank v. National Bank of Republic*, 78 Pa. 233.

Upon the petition for rehearing, we have very carefully gone over the whole case and reviewed the authorities cited. Some of these authorities from other states are not in accord with the cases decided in our own state, and while we have modified some things set out in the former opinion, we are not able to arrive at a different conclusion.

The appellant should have had judgment in the lower court for the sum of $500 and interest thereon at the rate of 5 per cent per annum from December 24, 1921, when appellant tendered back the forged check and demanded payment of the moneys paid thereon, and the judgment of the lower court will be reversed and a judgment entered in this court in favor of the appellant and against the appellee for the sum of $500 and interest at the rate of five per cent per annum from December 24, 1921.

The judgment of the lower court is reversed.

*Reversed.*

And the clerk of this court is directed to enter a judgment in this court in favor of the appellant, the First State Bank and Trust Company of Canton, and against the appellee, The First National Bank of Canton, for the sum of $557.03 and the costs of suit in the lower court and of this appeal, the judgment to be entered as of this date April 9, 1924.