ANGELINE F. B. ENSIGN *vs.* HIRAM E. BARKER & another,
executors & trustees.

Suffolk.   December 7, 1905. — April 3, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Accord and Satisfaction.   Trust,* Termination.

An agreement in writing, executed by the beneficiaries of a trust created by will
and the trustees, providing for the final distribution of the property held in
trust, followed by a final account of the trustees showing a full distribution of
the property in accordance with the agreement and leaving nothing in the hands
of the trustees, the account being assented to by the beneficiaries and filed
and allowed by the Probate Court, together constitute a full and final settle-
ment not only of the matters appearing upon the face of the accounts but
of all matters relating to the trust which the beneficiaries by the exercise of
reasonable diligence could have known.

HAMMOND, J.   This is a petition to set aside decrees of the
Probate Court, to open and correct accounts, and to have the
respondents, as executors and trustees under the will of Hiram
Barker, account for property of their testator alleged to be
hitherto unaccounted for by them.

At the trial before the Chief Justice of this court it appeared
that an agreement in writing was made between the petitioner
and the respondents.   A question was raised and evidence was
introduced in regard to the validity of the agreement.   The
only ground upon which its validity was attacked by the peti-
tioner was that she signed it under coercion.   The Chief Jus-
tice found against her on this issue.   He further found that the
agreement was made and executed as and for a full settlement
between the parties in all matters relating to the trust, and that
it was valid and binding upon them.   It appeared that before
this petition was brought the agreement, with some modifications
afterwards agreed upon, had been carried out.

The Chief Justice was of opinion that, by reason of this agree-
ment and the action of the parties in performance of it, the
petitioner should not be permitted to have the accounts opened
and to have the respondents account in accordance with the
prayers of her petition and the suggestion of her specifications

of objections to the decree of the Probate Court; and that the petition should be dismissed. At the request of the petitioner, however, he reported the question of law to the full court.

If the petitioner is not entitled as matter of law upon these facts to maintain her petition by proof of the averments contained in it, the petition is to be dismissed. But if she is so entitled, then the case is to stand for trial, or such other order is to be made as justice and equity require.

The finding that the petitioner was not coerced into signing the agreement was amply sustained by the evidence. The agreement must therefore be held binding upon her. The legal effect of the agreement and the acts of the parties in carrying it out remain to be considered. The petitioner contends that it was simply a division of the trust property then in the possession of the trustees. · The respondents on the contrary contend that it was in the nature of a compromise and settlement of all matters relating to the trust estate, and when carried out worked an accord and satisfaction.

It is useful to consider the circumstances under which the paper was signed. The testator who was the father of the parties to this suit died in June, 1893, leaving an estate of about $170,000. The respondents had filed three accounts as executors, the last purporting to be a final account, and nine accounts as trustees, the last purporting to be a final account. The accounts covered the time from their appointment as executors in 1893, to April 28, 1904. The last trustee account showed in detail the final disposition of the property among the beneficiaries. Each of these accounts was assented to in writing by the petitioner before it was filed, and each was allowed by the Probate Court. The petitioner was a married woman and her husband was a lawyer, and each had full opportunity to see what the accounts were before she assented to the same, and her husband acting for her seems to have carefully scrutinized each account before she assented to it. The petitioner and her husband, who acted as her legal adviser, knew from the first that her father at the time of his death was a partner in the firm of H. Barker and Company. It is alleged in the petition that the accountants " neglected and refused to disclose to the petitioner their doings as executors and as trustees, though often requested so to do," and

" that they have refused to allow [her] to examine their books of account and the books of the copartnership of H. Barker & Co. though requested so to do." The trust was to terminate upon the death of the widow of the testator, which occurred in October, 1903, and the time had arrived for the settlement of all matters connected with the estate, including the distribution of the property. The negotiations for the final settlement of the accounts and the distribution covered several months, and finally the agreement in question was reached. Although bearing the date of March 30, 1904, it was not signed until three or four weeks later. It was also agreed that the final account of the trustees should be in accordance with this.

For years these various accounts, some of which were assented to by the petitioner, had been filed and allowed. For years she by her counsel had had full opportunity to examine them, and to detect any inaccuracy or error in any form. If there were any discrepancies upon the face of the accounts she had an opportunity to point them out and to make objection if she desired. She had known from the first of the relations her father sustained to the firm at the time of his death. Moreover, if the statements of the petition are true, she had been denied an opportunity to examine the accountants' books and the books of the partnership. Under these circumstances the agreement was signed.

It purports upon its face to be an " agreement as to the division of the residue of the estate of Hiram Barker . . . by and between . . . [the] trustees under the will of the said Hiram Barker . . . [and] the sole heirs at law and residuary legatees and devisees under the said will," and proceeds as follows : " Whereas the real and personal property belonging to the said estate, hereinafter specified, is all that is known to be and to constitute said residue, by the above named parties, and it is impossible to make an exact division of the same except by sale and conversion of the same into money, which none of the said parties desires to have done, now therefore," etc. It then goes on to state in great detail the division to be made. After the agreement was carried out, the ninth and final account of the trustees, which showed a full distribution of the property leaving nothing in the hands of the trustees, was assented to by the petitioner, filed,

and allowed by the court.   No appeal from the decree of allowance was taken, but within thirty days this petition was filed. Under these circumstances we are of opinion that the effect of this agreement and the procedings in accordance with its provisions were intended to be a full settlement of the trust account.   That settlement, by the consent of the petitioner, having been embodied in a final account which has been allowed by the Probate Court, must be regarded as a full and final settlement not only of the matters appearing upon the face of the accounts, but of the matters which the petitioner in the exercise of reasonable diligence could have known.

Even if the petitioner's remedy is by a separate bill in equity and not by appeal or other proceeding in probate, the allegations of the bill, even as to fraud, do not under the circumstances disclosed in this case, set out a case for the petitioner.

*Petition dismissed.*

*J. C. Ivy & C. S. Ensign, Jr.,* ( *C. S. Ensign* with them,) for the petitioner.

*S. C. Darling,* for the respondents.