HILDEVERT MARCOTTE *vs.* MASSACHUSETTS SECURITY
CORPORATION.

Hampden.    September 18, October 16, 1924. — November 24, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Conversion,* Of shares of corporate stock.  *Forgery.  Corporation,* Transfer of shares.  *Pledge.  Estoppel.*

One to whom the owner of shares of stock in a corporation had delivered his certificates, indorsed in blank, for safe keeping, forged the name of the owner upon an application to the corporation for a loan and upon a note to the corporation, and delivered to it the application, the note, and the certificates, in return for which the corporation sent by mail, addressed to the owner in care of the bailee, a check payable to the owner's order.  The bailee received the check, forged the name of the owner thereon, and collected it through his own checking account.  The owner and the corporation acted in good faith.  Upon failure of the owner to pay the note, the corporation sold the stock and bought it at foreclosure sale.  The owner, upon learning of the acts of the bailee, brought an action of tort for conversion against the corporation.  *Held,* that
    (1) The delivery of the stock to the corporation in the circumstances was not a pledge;
    (2) The defendant's check to the plaintiff's order, having been paid by the bank on which it was drawn on a forged indorsement, was not paid by the defendant's order, and therefore the defendant was not a holder of the shares of stock for value;
    (3) The defendant not being a holder of the shares of stock for value, a custom, of which there was evidence, as to certificates of stock indorsed in blank being regarded as bearer certificates, passing by delivery from hand to hand and being considered negotiable, was immaterial;
    (4) The sale and delivery of the stock in foreclosure were a conversion;
    (5) A finding for the plaintiff was warranted.

TORT for conversion of shares of stock in the defendant, the property of the plaintiff.  Writ dated August 14, 1923.

In the Superior Court, the action was heard by *Weed,* J., without a jury.  Material evidence is described in the opinion.  The trial judge found for the plaintiff in the sum of $529.75 and reported the action to this court for determination upon the stipulation of counsel for the parties that

if the facts did not as a matter of law warrant a finding for the plaintiff, judgment was to be entered for the defendant; otherwise judgment was to be entered for the plaintiff.

The case was submitted on briefs.

*H. E. Allen, W. W. Yerrall, & R. S. Bellows,* for the plaintiff.

*J. H. Sherburne, W. Powers, & D. Needham,* for the defendant.

SANDERSON, J.   This is an action of tort for the conversion of one hundred shares of the preferred and twenty shares of the common stock of the defendant corporation, and comes to this court by report, after a finding for the plaintiff in the Superior Court.

The plaintiff purchased the stock in question in 1921 from one George J. Chamberlain. Thereafter Chamberlain told him that it would be for the plaintiff's advantage to exchange said stock for stock in the Fisk Rubber Company, whereupon the plaintiff indorsed the certificates in blank and delivered them to Chamberlain. About a week later Chamberlain informed the plaintiff that this exchange could not be made, and suggested that the certificates be kept in his (Chamberlain's) safe deposit box while the plaintiff was away. (It appeared that the plaintiff was a woodchopper and that it was his custom to go into the woods each fall.) The plaintiff assented to the above suggestion and the certificates were retained by Chamberlain. Two days later the defendant received an application for a loan of $500, for which these certificates were to be pledged as collateral. The application purported to be signed by the plaintiff, but this signature was forged. The defendant, believing the signature to be genuine, mailed to the plaintiff at 22 Center Street, Holyoke, Massachusetts, care of George J. Chamberlain, a letter containing a note for $500, payable in instalments of $50 per month, and a collateral agreement dated September 2, 1922, to be executed. The address to which this letter was sent was the one shown on the books of the defendant as that of the plaintiff. About September 21, 1922, the defendant received back the note and collateral agreement, each bearing what purported to be the plaintiff's signature, both of

which were forgeries. At the same time the defendant received the said stock certificates each of which bore the plaintiff's indorsement as he had written it before delivering them to Chamberlain. The defendant, believing that the signatures to the note and collateral agreement were genuine, mailed to the plaintiff at the same address a check for $474, payable to his order. Thereafter a forged indorsement of the plaintiff's name was made on the check, beneath which Chamberlain's indorsement appeared, and the check was collected through Chamberlain's checking account in the Hadley Falls Trust Company. Letters demanding payment, the envelopes of which bore the return address of the defendant, were mailed by it to the address of the plaintiff. None of these letters were returned. On December 15, 1922, the defendant sent to the same address, by registered mail, notice that the stock would be sold at public auction December 27, 1922, and received back a receipt signed by Chamberlain ostensibly in behalf of the plaintiff. The sale was duly advertised and on December 27, 1922, the stock was sold by a licensed auctioneer to the defendant corporation which was the highest bidder. The plaintiff did not receive any of these communications sent by the defendant and knew nothing about the forgeries or use made of his stock until his return in the spring of 1923. Upon learning of its unauthorized use, the plaintiff made demand upon the defendant for its return, which demand was refused. The defendant acted in good faith at all times and had no knowledge of wrongdoing or want of genuineness in any of the signatures until it received notice from the plaintiff in the spring of 1923. It was agreed that there was a general business custom among brokers and bankers, that certificates of stock indorsed in blank are regarded as bearer certificates passing by delivery from hand to hand and are considered negotiable. The case was reported to this court with a stipulation that if the facts did not, as matter of law, warrant a finding for the plaintiff, judgment is to be entered for the defendant; otherwise for the plaintiff in a specified sum.

The loan which the defendant undertook to make was to the plaintiff, who was the true owner of the stock, and not

to Chamberlain, to whom the stock had been entrusted. The defendant made the check for the loan to the plaintiff's order and accepted for this the forged note and collateral agreement with the certificates of stock. The delivery of the stock, under these circumstances, was not a pledge: "It was an integral part of a criminally void transaction and can stand on no better ground than the rest of it." *Sherman* v. *Connecticut Mutual Life Ins. Co.* 222 Mass. 159, 162.

This case is to be distinguished from those in which " the owner of stock knowingly places in the hand of another the certificate therefor, either indorsed in blank or by a separate instrument of transfer and power of attorney," in which it is held that " the person to whom the certificate and instrument are delivered can pass a good title by delivery or pledge regardless of the relations between him and the owner. This is not on the ground that the certificate becomes a negotiable instrument, but on the ground of estoppel, because the owner, having given another such indicia of title as clothes him with the appearance of ownership, is precluded from setting up title in himself as against a holder in good faith." *Baker* v. *Davie,* 211 Mass. 429, 436. *Scollans* v. *E. H. Rollins & Sons,* 179 Mass. 346. *Russell* v. *American Bell Telephone Co.* 180 Mass. 467. Furthermore, the delivery of the certificates of stock by Chamberlain to the defendant not having been authorized, the plaintiff may reclaim them because the defendant is not a holder for value. G. L. c. 155, § 33. No value passed to the plaintiff; and the defendant's bank, which had the duty of determining whether the signature of the payee was genuine, paid the check not as ordered by the defendant, but upon a forged indorsement. *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397. The custom stated in the report, as to certificates of stock indorsed in blank being regarded as bearer certificates passing by delivery from hand to hand and being considered negotiable, cannot affect the rights of an owner, in case of an unauthorized transfer of his stock, to recover it from one who has paid the owner no value for it, and who received it to secure payment of the owner's forged note.

The sale of the stock by the defendant at public auction

and the delivery to itself as owner, when the defendant's only pretext of a right to make a sale was under a forged agreement and invalid pledge, are sufficient exercise of dominion to make the acts a conversion. *Varney* v. *Curtis,* 213 Mass. 309. No demand is necessary in a case where a defendant having no title to personal property exercises dominion over it. *Lancaster* v. *Stanetsky,* 221 Mass. 312. But the plaintiff made a demand for the return of the certificates after the defendant had purchased them at auction sale. *DeYoung* v. *Frank A. Andrews Co.* 214 Mass. 47.

The finding for the plaintiff was warranted.

In accordance with the terms of the report, judgment is to be entered for the plaintiff in the sum of $529.75, with interest from December 29, 1923.

*So ordered.*