HAROLD BROOKS *vs.* HOWLAND DAVIS & others.

Norfolk. January 17, 1935. — April 3, 1936.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Contract*, Construction. *Bailment*. *Trust*, What constitutes. *Conversion*. *Stockbroker*. *Practice, Civil*, Auditor, Judgment ordered in Supreme Judicial Court. *Words*, "Trust receipt," "The."

The owner of bonds delivered them to a customer of a stockbrokerage firm and received from him a receipt stating the bonds delivered and, "The above bonds to be in Trust for stock operations in the account of . . . [the customer] for the benefit jointly in profits equally between . . . [the owner and the customer]. It is agreed that a Trust receipt is to be given embodying an understanding as to the duration of the time which is six· months, and a guarantee by said . . . [customer] against loss to . . . [the owner.] It is further agreed that in any event the . . . bonds will not be sold and it is also further agreed that the net profit to . . . [the owner] will total" a certain amount. The owner knew the bonds were to be used by the customer as the basis of stock operations conducted by him in his own name through the office of the stockbrokers. *Held*, that it was proper to interpret the contract between the owner and the customer as one of bailment and not of trust in the strict sense; and a finding that, when the bonds afterwards were delivered by the customer to the stockbrokers, they still were the property of the owner, was warranted.

The receipt above described did not authorize use of the bonds by the customer as collateral for his account with the stockbrokers respecting transactions which antedated their delivery to him.

Upon misapplication of securities by a stockbroker, the owner has a right of action for conversion without demand for their return.

A firm of stockbrokers converted bonds delivered to it by a customer, when it credited them as collateral against his existing general account, knowing that they were the property of a third person and had been placed in the possession of the customer for use only in "stock operations" to be conducted for the joint benefit of their owner and the customer; and, if the firm knew only that the bonds

belonged to someone other than the customer, liability for conversion would exist, since it would then be its duty to ascertain whether the use made of them would be proper.

Where, in an action against several defendants jointly, the jury found for the plaintiff against one defendant and a verdict was ordered for the other defendants, but it appeared to this court that on the established facts the plaintiff was entitled to recover against the other defendants also, rescript was sent directing the entry of judgment against the other defendants subject to the limitations that a joint judgment against all the defendants should not exceed in amount that to which the plaintiff was entitled against the one defendant because of the verdict, and that a sole judgment against the other defendants should not be entered unless previously there had been a discontinuance against the one defendant.

TORT. Writ in the Superior Court dated June 20, 1930.

The action was tried before *Morton*, J. He ordered a verdict for the plaintiff against the defendant Castle in the sum of $96,412.50 and interest, i.e. $125,000; and ordered a verdict for the other defendants. The plaintiff alleged exceptions.

*F. P. Garland*, (*J. DeCourcy* with him,) for the plaintiff.

*E. O. Proctor*, (*L. Withington & B. Potter* with him,) for the defendants.

FIELD, J. This is an action of tort against certain defendants, partners under the name of Blake Brothers and Company, and the defendant Castle, not a partner in that firm, for conversion of bonds, the property of the plaintiff. The case was heard by an auditor and thereafter tried before a judge and a jury on the auditor's report and other evidence. A verdict for the plaintiff against the defendant Castle was returned by the jury by direction of the judge. The other defendants moved that a verdict be directed in their favor. The motion was allowed and by direction of the judge a verdict was returned for them. The case comes before us on the plaintiff's exceptions to the allowance of the motion and to the direction of a verdict for these defendants.

1. The direction of a verdict for the defendant partners was error.

The auditor made a general finding for the plaintiff against the defendants, including the defendant partners, in alternative amounts, however, depending upon whether

as matter of law the conversion took place on October 31, 1929, or on June 17, 1930. This general finding was *prima facie* evidence warranting a verdict for the plaintiff against all the defendants, even if there was evidence in the case sufficient, if believed, to control the general finding, unless this general finding was necessarily inconsistent with other findings in the report or with evidence outside the report binding on the plaintiff. G. L. (Ter. Ed.) c. 221, § 56. *Newell* v. *Chesley*, 122 Mass. 522, 524. *Quin* v. *Bay State Distilling Co.* 171 Mass. 283, 290. And the general finding of the auditor is none the less *prima facie* evidence even if it is not supported by the subsidiary findings — unless it purports to be so supported — since such finding imports findings of the subsidiary facts essential to the conclusion. It "is enough if they do not contradict it." *Robinson* v. *Hooker*, 174 Mass. 490, 491. *Carroll* v. *Carroll*, 188 Mass. 558, 559.

The transaction out of which this case arose, according to subsidiary findings of the auditor not contradicted by any other evidence, was this: The plaintiff was the owner of the bonds in question. On October 30, 1929, the defendant Castle asked the plaintiff whether he had $100,000 in bonds which he was not using, and the plaintiff replied that he thought he could raise that amount. The defendant Castle then said to the plaintiff, in substance, that "This Ven-Mex oil (five hundred shares of which, amounting to $31,000, Brooks had purchased upon Castle's recommendation when they first became acquainted) has been taken over by a syndicate and it is going to go through in about three weeks time — about the eighteenth or nineteenth of next month. I am going to be a very rich man. I am going to get over a million dollars in cash out of that deal. I wish you would let me have $100,000 for a short time. If you will do that, I will guarantee that the bonds will not be sold and will be returned to you intact and I will give you $100,000 profit on them. I want them right away before two o'clock today. Can you get them for me?" The plaintiff replied that he thought he could get the bonds and said that they were in his safe deposit vault. Thereafter, on the same day, the plaintiff delivered the bonds — of the par value of $100,000

— to the defendant Castle. The defendant Castle gave the plaintiff a receipt in this form: "H. C. Castle P. O. Box 1255 Boston   October 30, 1929.   Received from Harold Brooks of Quincy, Mass., One Hundred Thousand ($100,-000.00) Dollars par value bonds as per list below . . . [Here follows a list of bonds with coupons attached.] The above bonds to be in Trust for stock operations in the account of H. C. Castle for the benefit jointly in profits equally between Harold Brooks and H. C. Castle. It is agreed that a Trust receipt is to be given embodying an understanding as to the duration of the time which is six months, and a guarantee by said H. C. Castle, against loss to said Brooks. It is further agreed that in any event the above list of bonds will not be sold and it is also further agreed that the net profit to Brooks will total $100,000. H. C. Castle." So far as appears no further writing relating to the bonds was ever drawn up or signed by the defendant Castle. The defendant Castle on the same day delivered the bonds to Blake Brothers and Company at their office. Blake Brothers and Company gave to the defendant Castle a receipt reading in part as follows: "Boston, Oct. 30, 1929.   H. C. Castle   Boston, Mass.   Dear Sir: We received the securities listed below the securities listed below." Then follows a list of the bonds delivered by the plaintiff to the defendant Castle. Below this list "appear the words 'On A./C'. The receipt is signed 'Blake Brothers & Co. Per. G. L. Eaton' and is also stamped with a rubber stamp, 'Blake Bros. & Co. (all) J. F. Daly.'" "When Brooks delivered the bonds to Castle, he knew that Castle intended to deliver the bonds to Blake Brothers and Company and that they were to be used as the basis of stock operations conducted in Castle's name through the office of Blake Brothers and Company. After the bonds had been delivered to Blake Brothers, Brooks knew the terms of the receipt given . . . by Blake Brothers to Castle. After the delivery of the bonds to Blake Brothers, Castle did through Blake Brothers make certain purchases and sales of securities on his general account in that office. Castle kept in his own office a separate record as to those transactions on

his general account which were for the joint benefit of himself and Brooks. . . . These operations resulted in a loss of $11,000." The defendant Castle at the time was carrying two margin accounts with Blake Brothers and Company, one in the name of "H. C. Castle" and the other in the name of "H. C. Castle, Special," which were the defendant Castle's personal accounts. (Changes in the membership of the firm of Blake Brothers and Company took place on January 1, 1930, but no question is argued based upon such changes.) The bonds which were delivered by the plaintiff to the defendant Castle and by him to Blake Brothers and Company "were credited on the account standing in the name of H. C. Castle and continued as collateral on that account until the latter part of 1930, when they were sold by the 1930 firm of Blake Brothers & Company and the proceeds of the sales credited on Castle's account. On June 17, 1930, which was before the bonds were sold, a written demand was made on the defendants who comprised the 1929 firm of Blake Brothers and Company and on Henry C. Castle by counsel acting in behalf of Brooks for the return of the bonds . . . and also for the payment to Brooks of the $100,000 profit described" in the receipt given by the defendant Castle to the plaintiff.

The auditor found as a fact that one of the defendant partners of Blake Brothers and Company "knew on October 30, 1929, when the bonds were delivered by Castle to Blake Brothers that they were the property of the plaintiff Brooks" and that he "then knew of the terms and conditions of the receipt . . . given by Castle to Brooks."

. The auditor found further as follows: "The bonds were delivered by Brooks to Castle 'for stock operations in the account of H. C. Castle for the benefit jointly in profits equally between Harold Brooks and H. C. Castle.' They were not delivered by Brooks to Castle for the purpose of having them used as collateral on Castle's preëxisting account. When they were placed as general collateral on Castle's general account and Castle and Blake Brothers knew, as I have found they did, that this was a diversion of the bonds from the special purpose for which they were

received [*sic*]. The bonds were then of the value of $96,-412.50." The auditor found for the plaintiff "against both defendants, Castle and Blake Brothers" in the sum of $96,412.50 and interest thereon from October 31, 1929, and also made findings in the alternative if as matter of law "a demand for a return of the bonds would be necessary before conversion could be established," including a finding that "Such a demand was made on June 17, 1930."

At the trial, where the auditor's report was introduced in evidence, the defendant partner referred to therein testified that in what he did he acted for the partnership, that he knew at the time the bonds were delivered to the partnership that they "belonged to some one other than Castle" and "knew at some time that they were Brooks's bonds," that he "probably knew by October 31 that they were Brooks's bonds. . . . By the thirty-first of October . . . [he] knew that Castle had borrowed these bonds from Brooks." This witness when shown the receipt signed by the defendant Castle stated that "he had never seen the document up to the time it was produced in the trial of this case," that on the "day the bonds were delivered . . . [he] did not have the slightest knowledge in any way shape or manner of the contents" of this receipt. He testified further that the defendant Castle's "debit balance on his account or accounts in the latter part of October, 1929, was about half a million dollars" and that he had asked the defendant Castle for more security. At the trial there was also evidence of a so called "customer's agreement" in writing signed by the defendant Castle and addressed to Blake Brothers and Company. It contained among others the provision that "if at any time my [the defendant Castle's] margin becomes in your [Blake Brothers and Company] opinion unsatisfactory, you may close my account or sell for your own protection any or all of the securities carried or held for me at public or private sale without further notice."

The contention of the defendant partners in support of the directed verdict is that, even if the terms of the receipt given by the defendant Castle were known to these

defendants as the auditor found, on a proper interpretation of the receipt they were not guilty of conversion of the bonds in dealing with them in the manner described by the auditor. These defendants do not contend that upon any other ground the general finding of the auditor is inconsistent with the subsidiary findings or with evidence binding on the plaintiff.

This contention cannot be sustained. The facts that the bonds were delivered by the plaintiff to the defendant Castle and the ·receipt therefor given by the defendant Castle, as found by the auditor, are not controlled by any subsidiary finding of the auditor or by any evidence. These facts import a contract of bailment of the bonds between the plaintiff and the defendant Castle for the special purpose stated in the receipt. See *Security Bank* v. *Fogg*, 148 Mass. 273; *Varney* v. *Curtis*, 213 Mass. 309. The provision for another writing described as a "Trust receipt" which, so far as appears, was never executed, "looked only to the expression of the bargain, already made, in a more formal document." *Duggan* v. *Matthew Cummings Co.* 277 Mass. 445, 450. But the provisions to be incorporated in the more formal document are to be considered in determining the meaning of the receipt. The words "Trust receipt," however, were not used in their technical meaning, since in that meaning they would not be appropriate to the situation disclosed by the receipt. *Peoples National Bank* v. *Mulholland*, 228 Mass. 152, 155. And the use of the word "Trust" in this phrase and in the provision that the bonds are "to be in Trust for stock operations in the account of H. C. Castle for the benefit jointly in profits equally between Harold Brooks and H. C. Castle" is not of controlling significance as determining whether the bonds were held by the defendant Castle as a trustee with title or as a bailee without. It is not unusual to find a bailment defined as a "delivery of goods in trust." See 2 Bl. Com. 451. 2 Kent, Com. 558. And the "context and subject-matter of a contract may show that in a particular sentence an ordinary word has an unusual meaning; or that a word whose meaning, taken by

itself, is clear, has been inaccurately used." Williston on Contracts, § 618. Though the word "Trust" was used in the receipt, the absence of any statement in such receipt in respect to title to the bonds, the limitations therein on the use of such bonds and on the time during which such use was to continue, and the provision that the bonds would not be sold indicate that the defendant Castle was a bailee of such bonds rather than a trustee thereof in the strict sense. See *Hunt* v. *Wyman*, 100 Mass. 198; *Sturm* v. *Boker*, 150 U. S. 312, 329–330. The receipt so interpreted is consistent with the clearly implied and unrebutted finding of the auditor that the bonds when delivered by the defendant Castle to Blake Brothers and Company were the property of the plaintiff.

The terms of the bailment, however, imply that the bonds could be used by the bailee as collateral security in "stock operations." There is no other way — as matter of common knowledge or as shown by the evidence — in which they could be used "for stock operations" unless they were sold and the proceeds of the sale so used. And such use of the bonds is precluded by the terms of the receipt. But the provision that they would not be sold is not to be interpreted as preventing use of them as collateral security with the risk of possible sale in case of default on the obligation secured. Such an interpretation would render the contract of bailment nugatory, a result which is not to be reached unless, as is not the case, this construction of the receipt is plainly required by its language. See *Ferguson* v. *Union Mutual Life Ins. Co.* 187 Mass. 8, 10; *Dahlstrom Metallic Door Co.* v. *Evatt Construction Co.* 256 Mass. 404, 414; Am. Law Inst. Restatement: Contracts, § 236 (a), (b).

Moreover the receipt by expressly authorizing the use of the plaintiff's bonds for stock operations "in the account of H. C. Castle" clearly authorized the use of such bonds for stock operations in the name of the defendant Castle. But the further provision that the stock operations for which the bonds were to be used were such operations "for the benefit jointly in profits equally" of the plaintiff and the defendant Castle is a limitation on the use of the bonds.

Whether the receipt means not only that stock· operations were to be in the name of the defendant Castle but also that the plaintiff was to incur no liability to the broker apart from the risk of loss of the bonds and of securities purchased in the course of the operations, and had that effect, need not be decided.  In any event we think the receipt contemplated only future stock operations and only such future stock operations as were for the joint benefit of the plaintiff and the defendant Castle — not all stock operations in the account of the defendant Castle.  If a different meaning of the receipt had been intended by the parties thereto they naturally would have used language more apt to express that meaning.

The defendants, however, rely on the use of the word "the" in the phrase "in the account of H. C. Castle" as indicating that the parties were contracting with reference to a specific existing account of that defendant.  This contention gives too great force to the word "the."  Full force is given to this word if the phrase in which it is used is interpreted as meaning that the contemplated stock operations were to be carried on for the account of the defendant Castle rather than for the joint account of that defendant and the plaintiff.  Moreover, neither the subsidiary findings of the auditor nor anything in the evidence at the trial requires or even warrants a finding that the plaintiff and the defendant Castle were dealing with reference to a specific existing account of the defendant Castle. This is true of the findings as to the preliminary conversation between the plaintiff and that defendant, the plaintiff's knowledge of that defendant's intention with regard to the bonds and his knowledge of the terms of the receipt for such bonds received by that defendant from Blake Brothers and Company.  Furthermore, whether or not the receipt received by the plaintiff from the defendant Castle refers to a specific existing account of the defendant Castle, it does not fairly import that the plaintiff's bonds were to be used as collateral for an account or accounts of that defendant generally or for any stock operations therein not for the joint benefit of the plaintiff and the defendant

Castle. And no contract between the defendant Castle and Blake Brothers and Company which subjected all securities deposited by that defendant to risk upon his account or accounts could enlarge his rights to the use of the bonds as collateral security, at least unless the plaintiff expressly or impliedly assented to the use of his bonds in accordance with such a contract. Nothing in the subsidiary findings or in the evidence required or even warrants a finding that he assented to any such contract.

The defendant partners make the further argument that the defendant Castle may have intended that the plaintiff should share in the profits of his existing account and that upon the unrebutted findings of the auditor he did so intend. We do not so read the auditor's report. But even if the defendant Castle had such an intention his intention alone would not affect the interpretation to be given to the receipt. Doubtless the plaintiff and the defendant Castle could have agreed that the plaintiff's bonds might be used as collateral security for an existing account of that defendant or for specific stock operations carried on therein and that the plaintiff should share in the profits of such account or of specific operations later realized. But on the natural interpretation of the receipt — which states the terms of the agreement between the plaintiff and the defendant Castle — complete stock operations to be carried on in the future for the joint benefit of the plaintiff and the defendant Castle were contemplated, and not the acquisition by the plaintiff of an interest in the profits of stock operations already in progress. It follows that the statement of the auditor that the bonds "were not delivered by Brooks to Castle for the purpose of having them used as collateral on Castle's preëxisting account" was a correct interpretation of the receipt.

Discussion of the subsidiary findings in detail is not required. On the interpretation of the receipt which the auditor made and which we hold to be correct there is nothing in the report inconsistent with the auditor's general finding for the plaintiff against the defendant partners on the ground of a conversion of the bonds by them on Oc-

tober 31, 1929. At that time these defendants exercised dominion over the bonds by using them, as the auditor found, as collateral security for the general account of the defendant Castle — a use of such bonds outside the special purpose for which they were delivered by the plaintiff to the defendant Castle. And, as the auditor found on the basis of the knowledge of one of the defendant partners that the bonds — when delivered by the defendant Castle to Blake Brothers and Company — were the property of the plaintiff, and of this defendant partner's knowledge of the terms and conditions of the receipt given by the defendant Castle to the plaintiff, the defendant partners knew that the use of the bonds by them as collateral on the general account of the defendant Castle "was a diversion of the bonds from the special purpose for which they were received" by the defendant Castle. See *Varney* v. *Curtis*, 213 Mass. 309, 312. Demand by the plaintiff for the bonds was not necessary to establish conversion. *Marcotte* v. *Massachusetts Security Corp.* 250 Mass. 246, 250. *Lawyers Mortgage Investment Corp. of Boston* v. *Paramount Laundries Inc.* 287 Mass. 357, 361. Furthermore, nothing in the evidence at the trial, outside the report, required as matter of law any finding contrary to the subsidiary and general findings of the auditor. The auditor's report, therefore, was *prima facie* evidence which, at least, warranted a verdict for the plaintiff against the defendant partners.

2. The plaintiff contends, however, that under G. L. (Ter. Ed.) c. 231, § 124, judgment should be entered for the plaintiff against the defendant partners.

G. L. (Ter. Ed.) c. 231, § 124, authorizes this court, "if satisfied that it has before it all the facts necessary for determining the question in dispute," to direct the entry of "such judgment . . . as shall accord with the determination of the full court." The facts necessary for determining the question in dispute are established by the auditor's report except so far as that report, including both primary and secondary facts found, is reasonably susceptible of different inferences or of control by other evidence introduced at the trial before the judge and jury. *Anderson* v. *Metro-*

*politan Stock Exchange*, 191 Mass. 117, 121. *Barrell* v. *Paine*, 236 Mass. 157. However, there is nothing in the report or in the evidence outside it which could rebut any of the findings therein, apart from the evidence tending to show that the defendant partner referred to specifically in the report did not know the terms and conditions of the receipt given by the defendant Castle to the plaintiff. But on this issue a finding might have been made by the jury which would be contrary to the auditor's finding and would rebut the auditor's conclusion, based on that finding, that the defendant partners knew that the use by them of the plaintiff's bonds "was a diversion of the bonds from the special purpose for which they were received" by the defendant Castle. However, the finding that the defendant partner referred to specifically in the report knew that the bonds were the property of the plaintiff is not rebutted by any warrantable inference from other findings in the report or by any evidence. And his knowledge of this fact is imputed to the other partners. *Boston Box Co. Inc.* v. *Shapiro*, 249 Mass. 373, 380. 20 R. C. L. 938. Having such knowledge the defendant partners had a duty to ascertain whether the bonds could be used legally as collateral security for the general account of the defendant Castle, and were bound by the limitations upon such use as fully as if they had known the terms of the receipt fixing such limitations. *Shaw* v. *Spencer*, 100 Mass. 382, 389. *Fisher* v. *Brown*, 104 Mass. 259, 261. *Kellogg* v. *Tompson*, 142 Mass. 76, 79–80. And this knowledge of the defendant partners with the other unrebutted subsidiary facts found by the auditor entitled the plaintiff as matter of law to a verdict against them in the sum of $96,412.50 and interest thereon from October 31, 1929. If, therefore, the defendant partners were the only defendants in this case, judgment for the plaintiff against them might properly be ordered. See *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424, 429; see also *Semons* v. *Towns*, 285 Mass. 96, 100–101.

This case, however, was brought against the defendant Castle and the defendant partners jointly. See *McAvoy* v. *Wright*, 137 Mass. 207. And there·has been a verdict

against the defendant Castle which fixed his liability.   But there can be only one judgment in this action.   *Contakis* v. *Flavio*, 221 Mass. 259, 261.   Subject to the following limitations, however, a judgment may be entered for the plaintiff against the defendant partners in the amount of $96,412.50 with interest from October 31, 1929.   If judgment is entered against the defendant Castle and the defendant partners jointly it shall not exceed in amount the judgment to which the plaintiff is entitled against the defendant Castle by reason of the verdict against him.   And judgment shall not be entered against the defendant partners only unless the plaintiff has previously discontinued against the defendant Castle.   See *Munroe* v. *Carlisle*, 176 Mass. 199, 201.

It follows that the plaintiff's exceptions must be sustained and that judgment may be entered for the plaintiff against the defendant partners in the amount of $96,412.50 with interest from October 31, 1929, subject to the limitations above stated.

*So ordered.*