ANNIE K. JONES *vs.* WALTER BABCOCK SWIFT & others.

Norfolk.    December 10, 13, 1937. — April 8, 1938.

Present: RUGG, C.J., FIELD, LUMMUS, QUA, & COX, JJ.

*Bona Fide Purchaser. Pledge. Trust,* Pledge by trustee, Following trust property.

A transaction, by which shares of stock, held by a trustee and wrongfully pledged by him to secure a loan made to him for the benefit of a second trust of which he was also trustee, were delivered after his death, through the possession of his executor and of his successor as trustee of the second trust, to the beneficiary of that trust upon the beneficiary's paying the amount of the loan, did not constitute that beneficiary a purchaser for value of the shares as against the beneficiary of the first trust.

PETITION IN EQUITY, filed in the Probate Court for the county of Norfolk on May 1, 1935.

From a final decree entered after a hearing by *McCoole, J.,* the respondent Swift appealed.

*J. G. Brackett,* for the respondent Swift.

*D. K. Mackay,* for the petitioner.

*R. I. Hunneman,* for the respondent Johnson.

COX, J. This is an appeal from a decree of the Probate Court which runs against the respondent Swift alone. The

petition, when filed, named as respondents Leila M. Johnson, individually and as executrix of the will of her husband Laurence H. H. Johnson, John G. Brackett, as trustee under a written declaration of trust for the benefit of the now respondent Swift and others, and the American Telephone and Telegraph Company. The respondent Swift, hereinafter referred to as Swift, was not then named as a party. This petition alleged in substance that, prior to and up to the time of his death, Laurence H. H. Johnson, hereinafter referred to as Johnson, held certain assets in trust for the petitioner, including twenty shares of the capital stock of the respondent telephone company; that Johnson commingled these shares with his own assets, converted and wrongfully pledged them as security for a personal loan; that the respondent executrix received these shares or shares into which they had been transmuted, as also did said Brackett, as trustee; and that the petitioner had never received them. Thereafter, motions were allowed, joining Swift and the Boston Safe Deposit and Trust Company as respondents, and dismissing the petition as to the telephone company and Brackett, as trustee, and also adding allegations to the effect that Swift, the donor of the trust of which Brackett was trustee, received said shares specifically or as transmuted and that they were in the possession of the Boston Safe Deposit and Trust Company. The new prayers were that the added respondents be ordered to turn over said shares specifically or as transmuted and all dividends received. No decrees appear to have been entered following the allowance of these motions. All of the respondents appeared and filed answers, Swift alleging, among other things, that he was a *bona fide* purchaser of the stock referred to in the petition, without notice of any defect in its title.

The case was tried upon an agreed statement of facts which permitted the drawing of inferences and also upon oral and documentary evidence. The judge filed no findings of fact. The decree ordered Swift "to provide and transfer to the petitioner . . . twenty shares of the common stock of the American Telephone & Telegraph Com-

pany and that said respondent Walter Babcock Swift pay to said petitioner" $495.

"Although no statement of the findings of material facts was filed by the trial judge, the entry of the decree imports the finding of every fact essential to the right entry of that decree permitted by the evidence. It is for this court in a proceeding of this nature (see *Drew* v. *Drew*, 250 Mass. 41, 43) to review the evidence and decide the case on its own judgment as to facts as well as law. But under the familiar rule, where, as in the case at bar, conflicting oral testimony has been heard, the finding of the trial judge as to facts either expressly made or necessarily implied from his disposition of the case, will not be reversed unless plainly wrong. *Glazier* v. *Everett*, 224 Mass. 184. *Star Brewing Co.* v. *Flynn*, 237 Mass. 213, 216." *Durfee* v. *Durfee*, 293 Mass. 472, 477. See *Malden Trust Co.* v. *Brooks*, 291 Mass. 273, 279; *Bratt* v. *Cox*, 290 Mass. 553, 557.

Johnson was trustee under a written "Trust Deed" executed by Swift in 1907. Among the trust assets were five hundred shares of the common stock of the American Telephone and Telegraph Company, the certificates representing which stood in Johnson's individual name. This number of shares was reduced to four hundred, "pursuant to the terms of said trust." On April 8, 1932, Johnson sold sixty of these shares without reporting the sale to Swift, who knew nothing of it until after Johnson's death. It is not known what disposition was actually made of the proceeds of this sale. Johnson never purchased any shares of telephone stock to replace the shares that were so sold or any part of them. He always paid amounts to Swift which were the equivalent of all dividends declared on the number of shares for which he was properly accountable as trustee. For convenience, shares of stock of the telephone company are hereinafter referred to as telephone stock.

Prior to April 27, 1932, the New England Trust Company, hereinafter described as the trust company, held two notes, both of which were signed by Johnson individually, one representing a loan of $25,000 which was "for the sole benefit of the Swift Trust," and one for $40,000 which was

for a personal loan. There is no provision of the trust that authorizes the trustee to borrow money. As a part of the collateral for these loans, the trust company, prior to April 27, 1932, held one hundred fifty shares of telephone stock. On that day, Johnson deposited with the trust company two hundred seventy additional shares of telephone stock as a part of the collateral for these two loans. Later the trust company released fifty of the four hundred twenty shares. Included among these two hundred seventy shares were twenty shares, the two certificates representing which stood in Johnson's name individually, although these twenty shares equitably belonged to the petitioner; and also ten shares which Johnson held as trustee under still another trust, the certificate for which, however, stood in his name individually. Johnson had acted as a trustee "in fact" for the petitioner since 1911, at least, when he purchased twenty shares of telephone stock for her account with money supplied by her. The certificates representing these twenty shares are traced, from the date of their purchase, into the hands of Swift, when they were transferred to him as hereinafter appears. The petitioner had no knowledge that these twenty shares were so pledged by Johnson until sometime before this petition was brought. Up to the time of Johnson's death, he always accounted to the petitioner for the dividends declared on these twenty shares and reported annually to her that he held them in trust for her. On October 5, 1931, he executed an instrument purporting to transfer to the petitioner these twenty shares, and this instrument, together with other securities belonging to her, was found in his safety deposit box after his death, which occurred on June 24, 1934. She has never received these twenty shares or their equivalent.

The officials of the trust company never knew that the $25,000 loan was obtained by Johnson "as trustee for the Swift Trust," but always regarded it as his personal loan; and Swift never knew, prior to Johnson's death, that this loan had not been obtained by Johnson in his name as

trustee, or that the stock so pledged as part of the collateral for said loan had not been issued in his name as trustee under the trust indenture; "but except as set forth above the loan was made with the knowledge and consent of said Swift."

After Johnson's death, Brackett, the new trustee under the Swift trust, and the respondent Johnson discovered that there were only three hundred seventy instead of four hundred shares of telephone stock pledged as collateral at the trust company, it being assumed by them that the three hundred seventy shares belonged to the Swift trust. The new trustee was unwilling to execute a note for the $25,000 loan, taking the position that he had no authority to do so. A conference was held at the trust company on October 25, 1934, at which the petitioner was not present or represented, for the purpose of arranging a transfer of the telephone stock, which all parties present assumed belonged to the Swift trust, subject to the rights of the trust company. It was "arranged" that the respondent Johnson "should deliver to said Brackett as trustee for said Swift said three hundred seventy shares of stock including said certificates . . . [which belonged equitably to the petitioner] upon payment by him [Swift] of said loan of $25,000." Swift signed a note for $26,000, the proceeds of which, so far as needed, paid the $25,000 note, the balance being paid to Swift. The respondent Johnson executed an assignment of the shares and power of attorney to effect their transfer; the certificates were passed by the treasurer of the trust company to the respondent Johnson, by her to the new trustee, and by him to Swift. The three hundred seventy shares of telephone stock were transferred in due time to Swift's name and the certificates were deposited as security for his $26,000 note. On October 25, 1934, the average value of telephone stock was $110.94 per share. These three hundred seventy shares are now held by the respondent Boston Safe Deposit and Trust Company as collateral for a loan made by it to Swift, a part of the proceeds of which were used to pay his $26,000

loan at the trust company. Until served with process, this respondent never knew that anyone other than Swift had any interest, legal or equitable, in the stock so pledged.

The parties to this transaction on October 25, 1934, regarded it not as a sale but rather as a transfer or assignment of the shares from "one to the other," and "It was understood by the parties that Swift . . . receive [*sic*] the benefit of the loan that was signed by Mr. Johnson, the proceeds of the loan, and therefore apparently the Swifts recognized that part of it and the Johnsons recognized that the Telephone pledged belonged to Dr. Swift. Therefore Mrs. Johnson released the Telephone stock, providing that Dr. Swift paid off the $25,000 demand note of the late L. H. H. Johnson . . . Dr. Swift was paying the obligation and" the treasurer of the trust company "understood he was receiving 370 shares of Telephone which he figured belonged to him because the loan was his loan." None of the parties at this conference on October 25, 1934, actually knew or had been informed that the stock which equitably belonged to the petitioner was included in the three hundred seventy shares which were transferred to Swift.

The parties are in dispute as to whether the twenty shares of telephone stock which belonged equitably to the petitioner were pledged as collateral for the $25,000 note or the $40,000 note, or both. We think the finding is permissible that these shares were pledged as collateral for the $25,000 note which was "for the sole benefit of the Swift Trust."

It is agreed that the American Telephone and Telegraph Company is a corporation organized under the laws of New York and that the uniform stock transfer act is in force in New York.

When Johnson pledged the telephone stock as collateral security for the loans at the trust company, he had the legal title to the stock. Although he had no express authority to borrow money for the purposes of the Swift trust, *Tuttle* v. *First National Bank of Greenfield*, 187 Mass. 533, 535; *Warren* v. *Pazolt*, 203 Mass. 328, 349, and no recovery on the loan, which was for the sole benefit of the Swift

trust, could generally be had from the trust property, *Dunham* v. *Blood*, 207 Mass. 512; *King* v. *Stowell*, 211 Mass. 246, nevertheless, from the record, the trust company appears to have held the pledged stock under the right, as against the trust, to dispose of it in extinguishment of the loan in accordance with the terms of the pledge, if the loan was not paid when due. *Ironside* v. *Levi*, 278 Mass. 18, 22. *Ripley* v. *J. Murray Walker & Co. Inc.* 286 Mass. 264, 268. *Edgerly* v. *First National Bank of Boston*, 292 Mass. 181, 185. In substance, the trust estate could not be required to pay the loan of $25,000, but neither could it recover the pledged stock unless the loan was paid. The legal title to the stock, which remained in Johnson up to the time of his death, had passed to the respondent executrix, subject, however, to the trusts. *Farrelly* v. *Ladd*, 10 Allen, 127. *Childs* v. *Jordan*, 106 Mass. 321. *Storer* v. *Coggan*, 260 Mass. 515. Brackett had been appointed trustee of the Swift trust, and prior to the adoption of the uniform stock transfer act, G. L. (Ter. Ed.) c. 155, §§ 24–44, legal title to the shares of stock in the Swift trust would have vested in him at once upon giving any bond required, by operation of law, by virtue of G. L. (Ter. Ed.) c. 203, § 6. *Sells* v. *Delgado*, 186 Mass. 25, 29. *Glazier* v. *Everett*, 224 Mass. 184. It is not necessary to determine whether this is no longer so because of the provisions of G. L. (Ter. Ed.) c. 155, § 27, which have been said to purport to provide the only way in which the legal title to certificates and the shares of stock that they represent can be transferred, *Place* v. *Chaffee*, 251 Mass. 508, 510; *Edgerly* v. *First National Bank of Boston*, 292 Mass. 181, 185, for we are of the opinion that it was at least the duty of the new trustee to take such formal steps as would be necessary to enable him to deal with the stock as new trustee. The transaction at the conference on October 25, 1934, when the stock was transferred, might be regarded as a compliance with the law, if Brackett had power to assent to the transfer, if Swift was a purchaser for value without notice, and if no rights of possible third parties were involved. See *Kelley* v. *Snow*, 185 Mass. 288, 299; *Downer* v. *Squire*, 186 Mass. 189, 199. At the conference Brackett

"claimed that the 370 shares were a part of the trust estate . . . of which . . . [he] was then the trustee." He was unwilling to sign a note to replace the Johnson note, for the reason that he considered that he was not authorized to do so, and Swift paid the loan "because . . . [it] was his loan." Swift was under no legal obligation to pay this loan, the payment of which released for the moment, so far as the trust company was concerned, all the collateral held by it as security for that loan, as well as part of the collateral held by it as security for the $40,000 loan. The value of the collateral so momentarily released at the conference was over $41,000.

Clearly there was no sale by the trust company in any sense of that word. The formalities which were observed at the time of the transfer, whereby the certificates were first handed by the treasurer of the trust company to the respondent executrix, are consistent with the legal rights of the parties to the $25,000 note. The transfer of the certificates by the respondent executrix to the new trustee would have been in conformity with her duty so far as the assets of the Swift trust were concerned, except that she had assigned the shares directly to Swift. Brackett as trustee, however, consented to this direct transfer. The argument is advanced by Swift that the trustee was justified in so consenting by reason of one or both of two provisions in the trust deed, which authorize the trustee (1) to "use said income and portions of the principal if . . . [he] deem it wise for . . . [Swift's] comfortable support and that of . . . [his] family"; and (2) to end the trust "if at any time . . . it shall seem wise to said trustee" to do so, whereupon the trustee "shall then distribute and pay over the property . . . to . . . [Swift] if living . . . ." Nowhere in the record is there any suggestion that the trustee was acting under either of these provisions of the trust agreement. The contention is inconsistent with the position taken by the trustee which was, in effect, that he could not recapture the pledged stock in his capacity as trustee, and would only assist by consenting to what was done.

If the trust company had been obliged to foreclose its collateral, it would have been the duty of the trustee to take steps to recover any balance which remained. Swift is chargeable with knowledge of the terms of the trust which he created, and must be held to have known that the transaction in which he was involved was unauthorized. See *Shaw* v. *Spencer*, 100 Mass. 382; *Loring* v. *Brodie*, 134 Mass. 453; *Allen* v. *Puritan Trust Co*. 211 Mass. 409, 421; *Tingley* v. *North Middlesex Savings Bank*, 266 Mass. 337.

It is necessary to consider what was the effect of the transfer of the stock to Swift, for it is contended that he was a purchaser of it for value. It is elementary that, if a trustee, in breach of trust, transfers property to one who takes with notice of the breach of trust or who gives no value for the transfer, the transferee does not hold the property free of the trust. *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268, 275. Am. Law Inst. Restatement: Trusts, §§ 288, 289. And a person who has been unjustly enriched at the expense of another may be required to make restitution to the other. Am. Law Inst. Restatement: Restitution, §§ 1, 4, Restatement: Trusts, § 292. The application of this general rule is found in cases of transfer of trust as well as other property, whatever may be the form that the remedy takes. *Bremer* v. *Williams*, 210 Mass. 256. *Fitcher* v. *Griffiths*, 216 Mass. 174, 177. *Neafsey* v. *Chincholo*, 225 Mass. 12, 18. *Metropolitan Trust Co*. v. *Federal Trust Co*. 232 Mass. 363, 367. *Chapple* v. *Merchants National Bank*, 284 Mass. 122, 145. *Hill* v. *Wiley*, 295 Mass. 396, 400. When the transferee is or is regarded as the equivalent of a *bona fide* purchaser for value, however, he has not been unjustly enriched, Am. Law Inst. Restatement: Trusts, § 279 (b), and where the transferee pays or agrees to pay to the transferor's creditor a debt of the transferor, the transferee has given value. *Carroll* v. *Sullivan*, 103 Mass. 31. *Smith* v. *Knapp*, 297 Mass. 466, 471.

Swift concedes that "the transaction in question was not a sale, in the ordinary sense of that term, but was merely an attempt to transfer to Swift legal title to stock which was

then supposed by all the parties to the conference of October 25, 1934, to belong equitably to the Swift Trust, of which Swift himself was the creator and principal beneficiary." He contends, however, "That a person who, as in this instance, takes title to property, and in consideration therefor, instead of handing the money to the vendor, pays to that vendor's creditor a debt owed by the transferor is, in legal contemplation, a *bona fide* purchaser for value of the property transferred" and that "That is the precise situation here."

In the strict legal sense, Swift paid the debt of Johnson when he gave his personal note, secured by the three hundred seventy shares of telephone stock, to the trust company, and this may be true although Swift regarded the $25,000 loan, which was "for the sole benefit of the Swift Trust," as "his loan." This loan was made with the knowledge and consent of Swift and we do not think he is shown to have been harmed by reason of the fact that he did not know that the loan had not been obtained by Johnson in his name as trustee, or that the stock which was pledged as part of the collateral for the loan had not been issued to Johnson in his name as trustee. See *Smith* v. *Knapp*, 297 Mass. 466. The respondent Johnson had no intention to transfer to Swift any stock which did not equitably belong to the Swift trust, and we think it is equally certain that at the time of the transfer there was no thought, much less any intention, on the part of Swift, of acquiring any stock which had not been purchased with funds of the Swift trust. The entire transaction was a means adopted to retrieve the stock by the expedient of substituting Swift's note for that of Johnson, secured by stock which belonged to the Swift trust together with thirty other shares, included in which were twenty wrongfully pledged by Johnson in breach of his trust for the petitioner. This appeared to be the only way in which the stock could be relieved of the possibility of sale by the trust company. Swift not only recognized the loan to Johnson as one that he should pay but also recognized that unless he paid it the trust company could sell the pledged

stock with the result that the principal of the trust would be reduced to the extent of the amount required to pay the loan. What Swift actually acquired, apart from possible increase in the value of the collateral released from the possibility of foreclosure, was the equity of redemption over and above the loan due the pledgee. We think that if Swift can be said to have been "buying" anything, it was merely this equity of redemption and that for this he paid nothing. What he did pay was merely the exact amount by which the trust estate would have been depleted if nothing had been paid and the trust company had foreclosed its pledge. Apart from any right which Swift may have given up by virtue of his special position as a beneficiary, he gave no independent consideration for the stock which was transferred and was in no better position than a donee of the trust property. Otis v. Otis, 167 Mass. 245. Epstein v. Epstein, 287 Mass. 248, 253. There is no suggestion of a distribution and final accounting in the Swift trust, as indicated in Newell v. Hadley, 206 Mass. 335, 349, where the right ordinarily is lost to proceed against the trustee. Harvard College v. Amory, 9 Pick. 446, 463, 464. Ensign v. Barker, 191 Mass. 323, 326. Anderson v. Bean, 272 Mass. 432, 437. See G. L. (Ter. Ed.) c. 206, § 22. No express agreement to exonerate the estate of Johnson by the transfer of the twenty shares is shown. Furthermore, at the conference, both Swift and the respondent Johnson knew nothing of any defalcations, and no intention existed at that time to reimburse for the misappropriation of the stock. No agreement, therefore, can be implied which can bind Swift from proceeding against Johnson's estate to recover the value of any property wrongfully used. Farnum v. Whitman, 187 Mass. 381, 383. Stoddard v. Ham, 129 Mass. 383, 385, 386. The case at bar is distinguishable from Newell v. Hadley, 206 Mass. 335, 349, in so far as, under the particular facts, the beneficiaries to whom property was transferred were there regarded as bona fide purchasers for value.

The argument is advanced that the loan to Johnson may

have been used in part to pay a prior note signed by Swift's father, and to that extent Johnson's loan was not for the sole benefit of the Swift trust, but we do not think this position is tenable in view. of the agreement that it was for the sole benefit and the further fact that Swift's conveyance in trust was subject, in the first instance, to an agreement between Swift and his father, as to which agreement the record is silent.

When Johnson died, the Swift trust was found to have a deficit of sixty shares of telephone stock. Prior to his death, he had wrongfully pledged twenty shares of such stock which equitably belonged to the petitioner, as collateral for a loan which was "for the sole benefit of the Swift Trust." If we assume that these twenty shares were used by Johnson as partial replacement of the sixty shares, nevertheless this did not constitute the Swift trust or the beneficiary a purchaser for value of the twenty shares, for reasons already stated.

We think that for the foregoing reasons, the facts of the case bring it within the principle of those cases that hold that a defendant, who receives property from his fiduciary, which has been obtained wrongfully from a third party, does not acquire title as against the true owner. See *Atlantic Bank* v. *Merchants' Bank*, 10 Gray, 532; *Skinner* v. *Merchants' Bank*, 4 Allen, 290; *Loring* v. *Brodie*, 134 Mass. 453; *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268; *Metropolitan Trust Co.* v. *Federal Trust Co.* 232 Mass. 363; *Chapple* v. *Merchants National Bank*, 284 Mass. 122.

The provisions of the uniform stock transfer act, G. L. (Ter. Ed.) c. 155, §§ 24–44, for reasons already stated, present no difficulty so far as the petitioner's right to recover is concerned. *Marcotte* v. *Massachusetts Security Corp.* 250 Mass. 246, 249. See *Casto* v. *Wrenn*, 255 Mass. 72, 75, 76.

The petitioner beneficiary is a proper party to bring this petition in her own behalf against the transferee of her trust property, without joining her trustee or successor as a petitioner. *Chace* v. *Chapin*, 130 Mass. 128. *Warner* v. *Morse*, 149 Mass. 400. *O'Herron* v. *Gray*, 168 Mass. 573.

*Donnelly* v. *Alden*, 229 Mass. 109.  *Moore* v. *Mansfield*, 248 Mass. 210.  See *Farrelly* v. *Ladd*, 10 Allen, 127.*

The decree which was entered should be brought down to date by a computation of the dividends received by Swift, and should provide for the dismissal of the petition as against the respondents Johnson and Boston Safe Deposit and Trust Company.  In other respects it is affirmed and the case is remanded to the Probate Court for entry of a decree in accordance with this opinion.

*Ordered accordingly.*