LISBON SPINNING COMPANY *vs.* WORCESTER TIRE FABRIC COMPANY.

Worcester.    September 26, 1938. — November 4, 1938.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Contract,* What constitutes, Performance and breach.  *Practice, Civil,* Auditor: findings, trial on report only; Ordering verdict.

At the trial of an action with the sole evidence the report of an auditor whose findings were not to be final, it was proper to order a verdict for the plaintiff where the auditor's conclusion in favor of the plaintiff was the only one permissible on his subsidiary findings.

Findings required a conclusion that the parties to several contracts of sale of yarn, after controversies had arisen between them, made a complete and binding agreement in settlement of the controversies, which the purchaser later broke by declining to proceed further with it after the seller had refused to give him a guaranty of quality that was not required by the settlement agreement.

Findings having required the conclusion that parties at a conference made a complete and binding oral agreement, the fact that at the close of the conference it was arranged that a memorandum should be prepared did not show that they contemplated the execution and delivery of a formal written contract as a prerequisite of their being bound.

CONTRACT.    Writ in the Superior Court dated January 26, 1935.

The action was tried before *T. J. Hammond,* J., who ordered verdicts as described in the opinion.   The defendant alleged exceptions.

*A. B. Comstock, (F. H. Free, Jr.,* with him,) for the defendant.

*J. T. Noonan, (M. J. Galvin* with him,) for the plaintiff.

RONAN, J.   This is an action of contract in which the

plaintiff seeks to recover damages on account of the failure of the defendant to perform the terms of an agreement, alleged to have been made in full settlement of all differences then existing between the parties and which arose out of certain contracts for the sale of cotton yarn. The defendant had made six contracts for the purchase of yarn from the plaintiff, but had taken only a portion of the yarn included in some of the contracts and had refused to take any of the yarn mentioned in the remaining contracts. Each of the first six counts of the plaintiff's declaration was based upon a breach of one of these contracts. The seventh count was for other goods sold and delivered. As the defendant admitted liability and the parties agreed upon the amount due, this count is not now in issue. The eighth count alleged the breach of an agreement settling the controversy existing between the parties on account of the defendant's failure to perform the above mentioned six contracts. The case was referred to an auditor whose findings of fact were not final. The only evidence introduced at the trial in the Superior Court was the report of the auditor. The judge, subject to the defendant's exception, directed a verdict for the plaintiff upon the seventh and eighth counts of the declaration. He then directed a verdict for the defendant on the first six counts of the declaration. The single issue presented for decision is the correctness of the action of the judge in directing a verdict for the plaintiff upon the eighth count.

The defendant contends that there are subsidiary facts contained in the report which are inconsistent with the general finding made by the auditor in favor of the plaintiff, and that they are of such a nature that a jury would be warranted in reaching a conclusion different from that of the auditor. A careful examination of the entire report, in accordance with the governing principles established by the decisions of this court, does not support the defendant's contention. *Wakefield* v. *American Surety Co.* 209 Mass. 173. *Brooks* v. *Davis*, 294 Mass. 236. *Savin* v. *Block*, 297 Mass. 487. *Rosenblum* v. *Ginis*, 297 Mass. 493. *Hunt Drug Co.* v. *Hubert*, 298 Mass. 195.

The plaintiff was pressing the defendant to take delivery of the yarn which it had ordered. Numerous conferences had been held and letters couched in strong language had been exchanged between the parties. The plaintiff had threatened suit. The defendant was one of its principal customers and had purchased more than three million pounds of yarn in the course of years. On December 12, 1934, the principal officers of both corporations met for the avowed purpose of settling all their differences. The unfilled orders and the complaints of the defendant as to the quality of yarn shipped to it by the plaintiff were discussed at great length. The parties settled all controversies upon substantially the following basis: the plaintiff cancelled two orders, each for fifty thousand pounds of yarn; the defendant was to take delivery at the rate of twenty-five thousand pounds for each of the next four months of all the yarn, which had been made up or was in process, on the other four orders and which amounted to about one hundred thousand pounds; the type of the yarn to be supplied on each of these four orders was agreed to; the defendant was to pay for yarn already delivered at an agreed but reduced price, and the same method of testing the yarn which had been employed for years was to be continued and the usual reduction in price would be given the defendant for any deficiency due to the quality of the yarn. The auditor found "that the parties made a binding agreement at the December 12 conference"; he set out in his report the terms of the agreement. These terms have just been enumerated. There was a breach of this agreement by the defendant and the auditor made a general finding for the plaintiff.

The principal contention of the defendant is that the agreement of settlement was not final because the parties did not determine the method to be used in testing the yarn. This point was raised before the auditor and is treated in considerable detail in his report. He found that "The plaintiff always recognized the right of the defendant to apply the cord-break test as the test of the quality of the yarn and always agreed that if the cord-break was low,

and if this deficiency was due to the quality of the yarn rather than to the defendant's manufacturing processes, the plaintiff would make a proper price adjustment. . . . The net result of the discussion [held on December 12, 1934] was an understanding between the parties that the situation as to testing yarn delivered to the defendant would continue without change, namely, that the defendant would continue to apply the cord-break test and if that test revealed a deficiency in the cord due to the poor quality of the plaintiff's yarn, the plaintiff would be responsible and an adjustment would be made." This is a clear and explicit finding that the method of testing the yarn was included in the settlement agreement. An examination of the report shows that each and every subsidiary finding is definite and certain and in complete harmony with the conclusion reached by the auditor. It is confirmed by a letter dated December 14, 1934, to the plaintiff from the defendant, in which it was stated that "We further understand that if the yarn shipped to us does not come up to the usual cord-break standards . . . adjustment will be made in accordance with our usual custom in the past." The ultimate finding of the auditor is unequivocal that the method of testing was agreed upon, and such finding must be accepted as true. There is nothing contained in the report upon which a reasonable inference could be based that a specific test had not been determined by the parties. *Wakefield* v. *American Surety Co.* 209 Mass. 173. *Adams* v. *Hayden,* 236 Mass. 454. *J. W. Grady Co.* v. *Herrick,* 288 Mass. 304. *Brooks* v. *Davis,* 294 Mass. 236.

The defendant began to operate under the agreement of December 12, 1934, but soon insisted that the plaintiff should guarantee the cord-break of the yarn. This would make the plaintiff liable if the yarn manufactured into a cord or a cord fabric might not have the required strength, due entirely to some manufacturing process employed by the defendant. The plaintiff stood on the agreement of settlement under which the defendant was authorized to apply this particular test, and if the break was low by reason of the quality of the yarn, there was to be the usual

adjustment of the price. Upon refusal of the plaintiff to guarantee the cord-break the defendant declined to proceed further under the settlement agreement. This agreement was binding on the defendant and it is liable for the breach. *Sherman* v. *Sidman*, 300 Mass. 102, and cases cited.

At the conclusion of the conference on December 12, 1934, one of the officials of the plaintiff requested that a memorandum be prepared setting forth the matters the parties had agreed upon. No stenographer was available, and this official stated that he would send the defendant "a memo of what we have done as soon as I get back to Boston and have it written." The defendant contends that the parties contemplated the execution of a written agreement, and that neither was bound until such a contract was signed and delivered. But it was not until the end of the conference and when a binding agreement had already been made that the services of a stenographer were sought; and, as found by the auditor, they were sought "for the purpose of putting in type what had been agreed upon." The report does not disclose that the parties intended to execute a written contract. No such request had been made. Neither was there any mention of a written contract. All that the parties had in mind was a written statement embodying the details of the settlement which they had just concluded. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 202 Mass. 177, 182. *Duggan* v. *Matthew Cummings Co.* 277 Mass. 445, 450.

*Exceptions overruled.*